ERIC W. BENISEK /CA SB# 209520
ebenisek@vbllaw.com
STEPHEN C. STEINBERG /CA SB# 230656
ssteinberg@vbllaw.com
VASQUEZ BENISEK & LINDGREN LLP
3685 Mt. Diablo Blvd., Suite 300
Lafayette, CA 94549
Telephone: (925) 627-4250
Facsimile: (925) 403-0900

Attorneys for Plaintiff Spiraledge, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPIRALEDGE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SEAWORLD ENTERTAINMENT, INC.;<br>SEAWORLD PARKS & ENTERTAINMENT, INC.;<br>SEAWORLD PARKS & ENTERTAINMENT LLC;<br>SEA WORLD LLC; and<br>DOES 1-10, inclusive,<br><br>Defendants. | Case No: 3:13-cv-00296-WQH-BLM<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1) **TRADEMARK INFRINGEMENT**<br>2) **UNFAIR COMPETITION (LANHAM ACT § 43(a))**<br>3) **UNFAIR COMPETITION (B&P CODE § 17200)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Spiraledge, Inc. alleges as follows:

### THE PARTIES

1. Plaintiff Spiraledge, Inc. ("Spiraledge") is a Delaware corporation with its principal place of business located at 110 Rio Robles, San Jose, CA, 95134.

2. Defendant SeaWorld Entertainment, Inc. ("SeaWorld Entertainment") is a Delaware corporation. Defendant SeaWorld Parks & Entertainment, Inc. is a Delaware corporation registered to do business in California. Defendants SeaWorld Parks & Entertainment LLC and Sea World LLC are Delaware limited liability companies registered to do business in California.

3. The four named Defendants have their principal place of business at 9205 South Park Center Loop, Suite 400, Orlando, FL, 32819. On information and belief, the other three

FIRST AMENDED COMPLAINT

named defendants are wholly owned and operated by SeaWorld Entertainment, and are and at all times herein mentioned were the alter egos of SeaWorld Entertainment, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between these four entities such that any separateness between them ceased to exist, in that SeaWorld Entertainment completely controlled, dominated, managed, and operated the other three named Defendants.

4. On information and belief, SeaWorld Entertainment has additional "Operating Subsidiaries," as described in a recent public filing, agents, and/or licensees, that were and are involved in the actions alleged herein, but whose names and capacities are unknown. Spiraledge therefore sues these defendants by fictitious names as Does 1-10, inclusive. Spiraledge will amend this complaint to allege their names and capacities when they are ascertained. Spiraledge alleges that each of Does 1-10 is liable to Spiraledge as hereinafter alleged as to the named Defendants. Spiraledge hereinafter collectively refers to all Defendants as "SeaWorld."

## JURISDICTION AND VENUE

5. This is a complaint for infringement of a federally-registered trademark arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), unfair competition arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition arising under California Business and Professions Code § 17200, *et seq*.

6. This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). This Court has related claim jurisdiction over the state law claim under 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over SeaWorld because it transacts substantial business in this district in that it owns and operates SeaWorld San Diego in San Diego, California, and recently acquired the Knott's Soak City water park in Chula Vista, California, which is currently being extensively renovated and rebranded as Aquatica San Diego before it re-opens in the spring of 2013.

8. Venue is proper in this district under 28 U.S.C. § 1391 because SeaWorld resides here and a substantial part of the events or omissions giving rise to the claims occurred here.

FIRST AMENDED COMPLAINT                                                                                                     1

# FACTUAL BACKGROUND

## Spiraledge's Business and Adoption and Use of the Aquatica Mark

9. Since at least 2001, Spiraledge and its predecessors in interest have run several businesses related to sports and fitness, including water-related products and services. For example, Spiraledge owns and operates one of the largest online retail shops selling swimwear and swim accessories in the United States at SwimOutlet.com. Spiraledge operates similar websites at SurfOutlet.com, RunOutlet.com, and YogaOutlet.com. Spiraledge also owns and operates iSport.com, which is a website designed to help people engage in sports and fitness activities by facilitating networking between people centered on such activities, and providing directories of sports facilities and a series of how-to guides for various sports. Spiraledge also owns and operates a website at SwimLessons.com that helps people locate swim instructors and schools.

10. On February 8, 2005, Spiraledge's predecessor, Club Swim, Inc. ("Club Swim"), filed an Intent to Use ("ITU") trademark application for the mark "AQUATICA" for online retail and wholesale store services featuring swimwear, clothing, and accessories, and online directories featuring information relating to water-related activities in International Class 35.

11. Club Swim merged into Spiraledge in November 2010.

12. The United States Patent and Trademark Office ("USPTO") approved the aforementioned application and issued federal trademark registration number 4,077,618 for the mark "AQUATICA" (the "Trademark") on the Principal Register on December 27, 2011. A true and correct copy of the registration certificate is attached hereto as **Exhibit A**.

13. Since at least as early as September 2008, Spiraledge, through itself and its predecessors, has been using the Trademark in interstate commerce, but its constructive date of first use, arising out its federal registration for the Trademark, is February 8, 2005.

14. Spiraledge uses the Trademark in various ways. First, it owns and operates an online store at Aquatica.com that markets and sells a line of swimwear, clothing, and accessories under the Trademark. Photos of some of these products are attached hereto as **Exhibit B**. These goods are offered for retail sale online at Aquatica.com and SwimOutlet.com, and are offered

FIRST AMENDED COMPLAINT                                                                                      2

wholesale online at Aquatica.com. Spiraledge has sold products under the Trademark to retail and wholesale customers throughout interstate commerce in all fifty states plus the District of Columbia. California, Florida, and Texas are three of the top five states for these sales, both by units and revenue.

15. Second, Spiraledge uses the Trademark to offer a searchable directory of water-related activities in all fifty states, including directories for locating swimming pools and water parks, at Aquatica.com. Screenshots of Spiraledge's online directories are attached hereto as **Exhibit C**.

16. Spiraledge advertises its goods and services under the AQUATICA mark primarily online.

17. Since at least as early as 2005, Spiraledge intended to make Aquatica.com the central clearinghouse for all of its water-related businesses and use the AQUATICA mark for its primary brand of clothing, swimwear, and accessories. SeaWorld's extensive, intentional infringement of the Trademark through its use of identical and confusingly similar marks on related goods and services has interfered with Spiraledge's business and plans for the Trademark, and has harmed its rights in the Trademark.

**SeaWorld's Use of the Aquatica Name and Infringement of Spiraledge's Mark**

18. SeaWorld owns and operates a chain of water parks under and using the mark AQUATICA with locations in Orlando, Florida, San Antonio, Texas, and Chula Vista, California. Sea World uses the AQUATICA mark at these parks to offer water rides, swimming pools, and swim lessons, among other things.

19. SeaWorld also sells goods with the AQUATICA mark prominently displayed on them, including clothing, swimwear, and accessories.

20. SeaWorld uses the marks AQUATICA and AQUATICA SEAWORLD'S WATERPARK in connection with its water parks and associated goods and services. Even when using the latter, the term AQUATICA is always the dominant term in the mark. Photos of some of SeaWorld's AQUATICA products are attached hereto as **Exhibit D**.

21. SeaWorld uses the AQUATICA mark to advertise its water parks and associated goods and services extensively online, rendering Spiraledge's Aquatica business virtually invisible. For example, when searching for "Aquatica" on Google, the top three and six of the top eight results are SeaWorld websites or related to SeaWorld's Aquatica water parks. Meanwhile, because of Sea World's extensive use, Spiraledge's Aquatica.com has been pushed to the second page.

22. SeaWorld's AQUATICA mark is identical to the Trademark.

23. SeaWorld's AQUATICA SEAWORLD'S WATERPARK mark is confusingly similar to the Trademark because they are similar in sound, appearance, connotation, and overall commercial impression.

24. Besides the similarity of the marks, SeaWorld's Aquatica goods and services are closely related to Spiraledge's Aquatica goods and services.

25. In light of the above, there is a likelihood of confusion, reverse confusion, mistake, and/or deception in the minds of customers, potential customers, and the public generally between the parties' goods and services.

**Evidence of Actual Confusion**

26. Confusion between Spiraledge's and SeaWorld's marks is likely, and has actually happened on numerous occasions.

27. For example, many consumers have called Aquatica.com customer service and filled out Aquatica.com's online contact form with questions about SeaWorld's Aquatica water parks and goods and services, including questions regarding hours, directions, employment, and various ticket-related issues, and complaints regarding an incident and defective merchandise purchased at the parks. At least one wholesale customer also asked if Aquatica.com was part of a store located within one of SeaWorld's Aquatica water parks.

**SeaWorld's Knowledge of Spiraledge's Aquatica Trademark and Intentional Infringement**

28. SeaWorld has known about Spiraledge's Trademark and the likelihood of confusion with its own marks for over seven years, since long before it opened its first Aquatica

FIRST AMENDED COMPLAINT                                                                                                  4

1  water park and began selling Aquatica-branded merchandise, and its infringement constitutes a
2  willful violation of Spiraledge's Trademark rights.

3      29.    As noted above, Spiraledge's predecessor, Club Swim, applied for registration of
4  the Trademark on February 8, 2005. Under Section 7(c) of the Lanham Act, the aforementioned
5  filing constitutes constructive use of the AQUATICA mark and, upon registration, confers a
6  right of nationwide priority against any person who tries to use the mark or files an application
7  for the mark for the first time after February 8, 2005.

8      30.    On September 15, 2005, Defendants' predecessor, Busch Entertainment
9  Corporation ("Busch"), filed an ITU trademark application for the mark "AQUATICA" for
10 amusement park services (Serial No. 78713792). On March 24, 2006, the USPTO suspended
11 this application based upon Club Swim's prior pending application for the Trademark.

12     31.    On May 26, 2006, Busch filed three ITU trademark applications for the mark
13 "AQUATICA SEAWORLD'S WATERPARK" for: a) amusement park services (Serial No.
14 78894576); b) clothing (Serial No. 78894480); and c) toy swimming accessories and inflatable
15 water toys (Serial No. 78894496). The USPTO later suspended the applications related to
16 amusement park services and clothing based upon Club Swim's prior pending application for the
17 Trademark.

18     32.    On June 1, 2006, Busch filed an ITU trademark application for the mark
19 "AQUATICA" for toy swimming accessories and inflatable water toys (Serial No. 78897927).

20     33.    On November 7, 2007, Club Swim filed oppositions against Busch's two pending
21 applications for the "AQUATICA" and "AQUATICA SEAWORLD'S WATERPARK" marks
22 for toy swimming accessories and inflatable water toys. After conducting discovery, Busch
23 abandoned these applications on February 25, 2009, and the USPTO entered a judgment against
24 Busch, sustained Club Swim's oppositions, and refused registration for the requested marks.

25     34.    Starting in 2008, Busch began using the "AQUATICA" mark in connection with
26 its water park in Orlando, Florida and associated goods and services.

27     35.    In December 2009, SeaWorld acquired Busch and all of its assets and liabilities,
28 including the Aquatica water park in Orlando, Florida.

FIRST AMENDED COMPLAINT     5

36. On December 27, 2011, the Trademark was registered to Spiraledge and the USPTO lifted its suspensions and began processing SeaWorld's three remaining pending trademark applications involving the "AQUATICA" and "AQUATICA SEAWORLD'S WATERPARK" marks.

37. On May 11, 2012, the USPTO issued an initial rejection of SeaWorld's trademark application for the mark "AQUATICA SEAWORLD'S WATERPARK" for amusement park services based on a likelihood of confusion with the Trademark. The USPTO found that:

    a) The marks are similar in sound, appearance, connotation, and overall commercial impression, and that the dominant portion of SeaWorld's mark is "Aquatica";

    b) Spiraledge's directories of water-related activities are closely related to SeaWorld's amusement park services because Spiraledge's services encompass the water-related activities of SeaWorld's services; and

    c) Spiraledge's store services featuring swimwear, clothing, and accessories are closely related to SeaWorld's amusement park services because amusement parks often have online stores selling similar goods.

38. On May 17, 2012, the USPTO issued an initial rejection of SeaWorld's trademark application for the mark "AQUATICA SEAWORLD'S WATERPARK" for clothing based on a likelihood of confusion with the Trademark. The USPTO found that:

    a) The marks are similar in sound, appearance, connotation, and overall commercial impression, and that the dominant portion of SeaWorld's mark is "Aquatica"; and

    b) SeaWorld's clothing goods are closely related to Spiraledge's clothing store because it sells the same kinds of goods.

39. On May 19, 2012, SeaWorld began using the mark "AQUATICA" in connection with its water park in San Antonio, Texas and associated goods and services.

FIRST AMENDED COMPLAINT      6

40. On June 18, 2012, the USPTO issued an initial rejection of SeaWorld's trademark application for the mark "AQUATICA" for amusement park services based on a likelihood of confusion with the Trademark. The USPTO found that:

    a) The marks are identical; and

    b) SeaWorld's and Spiraledge's services are of a kind that may emanate from the same source.

41. On July 30, 2012, SeaWorld contacted Spiraledge regarding the USPTO's rejection of SeaWorld's trademark applications and to inquire about a potential agreement with Spiraledge that would allow SeaWorld to register its marks. The parties engaged in subsequent discussions and negotiations through the end of 2012, but were unable to reach any agreement.

42. SeaWorld filed extensive responses to all three of the aforementioned rejections from the USPTO.

43. On November 20, 2012, the USPTO issued a final rejection of SeaWorld's application for the mark "AQUATICA SEAWORLD'S WATERPARK" for amusement park services based on a likelihood of confusion with the Trademark. The USPTO confirmed, among other things, that:

    a) The marks are similar in sound, appearance, connotation, and overall commercial impression, and that the dominant portion of SeaWorld's mark is "Aquatica";

    b) "[C]onsumers would very likely believe that SEAWORLD also has an online website featuring information related to water-related activities and an online retail store selling clothing and accessories; and thus mistakenly believe that [Spiraledge's] services are provided by SEAWORLD;

    c) Spiraledge's services would include water-related activities that are part of SeaWorld's water park services;

    d) SeaWorld's and Spiraledge's services are related for likelihood of confusion purposes; and

  e) Since the marks are similar and the services closely related, "prospective purchasers would likely be confused and mistakenly believe that [SeaWorld's] and [Spiraledge's] services emanate from a common source."

44. On December 8, 2012, the USPTO issued a final rejection of SeaWorld's application for the mark "AQUATICA SEAWORLD'S WATERPARK" for clothing because of a likelihood of confusion with the Trademark. The USPTO confirmed, among other things, that:

  a) The marks are similar in sound, appearance, connotation, and overall commercial impression, and that the dominant portion of SeaWorld's mark is "Aquatica";

  b) "[C]onsumers would very likely believe that SEAWORLD also has an online retail store and wholesale store selling clothing and accessories and have clothes to boot; and thus mistakenly believe that [Spiraledge's services] are provided by SEAWORLD;

  c) Therefore the marks are confusingly similar;

  d) SeaWorld's clothing goods are closely related to Spiraledge's online retail and wholesale clothing store services;

  e) SeaWorld's and Spiraledge's goods and services are related for likelihood of confusion purposes; and

  f) Since the marks are similar and the goods and services closely related, "prospective purchasers would likely be confused and mistakenly believe that [SeaWorld's] goods and [Spiraledge's] goods and services emanate from a common source."

45. On January 3, 2013, the USPTO issued a final rejection of SeaWorld's application for the mark "AQUATICA" for amusement park services based on a likelihood of confusion with the Trademark. The USPTO confirmed, among other things, that:

  a) The marks are identical;

FIRST AMENDED COMPLAINT    8

   b) The subject matter of Spiraledge's information services would encompass the water-related activities of SeaWorld's water park services, and Spiraledge's services would include water-related activities that are part of SeaWorld's water park services; and

   c) SeaWorld's and Spiraledge's services are related for likelihood of confusion purposes.

46. As shown above, the USPTO notified Busch of the Trademark in March 2006 by citing to it in suspending Busch's first trademark application for the "AQUATICA" mark, and Club Swim contacted Busch about the Trademark and potential confusion in 2007, long before Busch began using the "AQUATICA" and "AQUATICA SEAWORLD'S WATERPARK" marks. Yet Busch proceeded to open the first Aquatica water park in Orlando, Florida in 2008, and began selling clothing, swimwear, and accessories under the aforementioned marks.

47. After SeaWorld acquired the first Aquatica water park in late 2009, it was notified by the USPTO in mid-May 2012 that there was a likelihood of confusion between its use of the "AQUATICA SEAWORLD'S WATERPARK" mark in connection with its water park and sales of clothing and the Trademark. Nevertheless, SeaWorld proceeded to open the second Aquatica water park in San Antonio, Texas later that month.

48. The USPTO notified SeaWorld again in June 2012 that there was a likelihood of confusion between its use of the "AQUATICA" mark in connection with its water parks and the Trademark. Spiraledge also raised the issue in subsequent discussions and negotiations with SeaWorld. However, SeaWorld went on to acquire the Knott's Soak City water park in Chula Vista, California and began converting it into an Aquatica-branded water park.

49. In sum, in six separate office actions, including three final refusals, the USPTO has found a likelihood of confusion between SeaWorld's use of the marks "AQUATICA" and "AQUATICA SEAWORLD'S WATERPARK" in connection with its water parks and sales of clothing and the Trademark. Despite these repeated findings and discussions with Spiraledge and its predecessor, SeaWorld continues to use the marks unabated.

FIRST AMENDED COMPLAINT                    9

## FIRST CAUSE OF ACTION
### (Trademark Infringement (Lanham Act § 32) – Against All Defendants)

50. Spiraledge realleges and incorporates herein by reference Paragraphs 1-49 above.

51. SeaWorld's aforementioned acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

52. Spiraledge's federal trademark registration on the Principal Register for the Trademark is evidence of Spiraledge's exclusive right to use this mark, pursuant to the Lanham Act, 15 U.S.C. § 1115.

53. SeaWorld's wrongful use of the marks "AQUATICA" and "AQUATICA SEAWORLD'S WATERPARK" is likely to cause confusion and/or reverse confusion with Spiraledge's Trademark.

54. SeaWorld has engaged in such use despite having constructive and actual notice of Spiraledge's rights in and ownership of the Trademark.

55. As a proximate result of SeaWorld's actions, Spiraledge has suffered and will continue to suffer great damage to its business, goodwill, reputation, profits, and the strength of its Trademark. The injury to Spiraledge is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate Spiraledge for its injuries and Spiraledge lacks an adequate remedy at law.

56. The foregoing acts of infringement have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

57. Spiraledge is entitled to a preliminary and permanent injunction against SeaWorld, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, costs, and attorneys' fees.

## SECOND CAUSE OF ACTION
### (Unfair Competition (Lanham Act § 43(a)) – Against All Defendants)

58. Spiraledge realleges and incorporates herein by reference Paragraphs 1-57 above.

59. SeaWorld's aforementioned acts constitute unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

FIRST AMENDED COMPLAINT                                                                                         10

60. SeaWorld's wrongful use of the marks "AQUATICA" and "AQUATICA SEAWORLD'S WATERPARK" in connection with its goods and services is likely to cause confusion or mistake or deception, and furthermore constitutes a false designation of origin and/or false representation that wrongfully and falsely designates SeaWorld's goods and services as originating from or being affiliated or connected with Spiraledge.

61. As a proximate result of SeaWorld's unfair competition, Spiraledge has suffered and will continue to suffer loss of income, profits, and goodwill, and SeaWorld has and will continue to unfairly acquire income, profits, and goodwill. The injury to Spiraledge is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate Spiraledge for its injuries and Spiraledge lacks an adequate remedy at law.

### THIRD CAUSE OF ACTION
**(Unfair Competition (Cal. Bus. & Prof. Code § 17200, *et seq.*) – Against All Defendants)**

62. Spiraledge realleges and incorporates herein by reference Paragraphs 1-61 above.

63. SeaWorld's actions complained of herein are unlawful and/or fraudulent business acts or practices, constituting unfair competition in violation of California Business and Professions Code § 17200, *et seq*.

64. As a direct, proximate, and foreseeable result of SeaWorld's wrongful conduct as alleged above, Spiraledge has suffered injury and is entitled to relief, including disgorgement of all revenues, earnings, profits, compensation, and benefits obtained by SeaWorld as a result of its unlawful and/or fraudulent business acts or practices.

65. SeaWorld's unlawful and/or fraudulent business acts or practices described above are a serious and continuing threat to Spiraledge, and if SeaWorld is allowed to continue its wrongful conduct, Spiraledge will suffer further immediate and irreparable injury, loss, and damage. In the absence of preliminary and permanent injunctions, SeaWorld will continue to engage in the wrongful conduct described above.

## PRAYER FOR RELIEF

WHEREFORE, Spiraledge prays for judgment against SeaWorld on all causes of action and for the following relief:

a. For an order requiring SeaWorld to show cause, if any, why it should not be enjoined as set forth below, during the pendency of this action;

b. For preliminary and permanent injunctions enjoining SeaWorld from infringing on the Trademark by using the identical AQUATICA mark, confusingly similar AQUATICA SEAWORLD'S WATERPARK mark, or any other confusingly similar mark in connection with SeaWorld's water parks and associated goods and services;

c. For an order to the USPTO to reject or refuse registration of SeaWorld's trademark application serial numbers 78713792, 78894576, and 78894480.

d. For an accounting and award of SeaWorld's profits and disgorgement of SeaWorld's revenues, earnings, profits, compensation, and benefits obtained by their infringement and unlawful and/or fraudulent business acts or practices;

e. For Spiraledge's damages according to proof, trebled;

f. For exemplary and punitive damages;

g. For attorneys' fees;

h. For costs of suit herein incurred;

i. For post-judgment interest as ordered by the Court;

j. For any other remedy to which Spiraledge may be entitled under the Lanham Act or state law;

k. For a trial by jury; and

l. For any other and further relief the court may deem proper.

DATED: March 12, 2013            VASQUEZ BENISEK & LINDGREN LLP

By: /s/
STEPHEN C. STEINBERG
Attorneys for Plaintiff Spiraledge, Inc.

FIRST AMENDED COMPLAINT                                                           12