**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SPIRALEDGE, INC., <br><br> Plaintiff, <br> vs. <br> SEAWORLD ENTERTAINMENT, INC.; SEAWORLD PARKS & ENTERTAINMENT, INC.; SEAWORLD PARKS & ENTERTAINMENT LLC; SEA WORLD LLC; and DOES 1-10, inclusive, <br><br> Defendants. <br> ——————————————— <br> SEAWORLD PARKS & ENTERTAINMENT, INC.; SEAWORLD PARKS & ENTERTAINMENT LLC; SEA WORLD LLC, <br><br> Counterclaimants, <br> vs. <br> SPIRALEDGE, INC., <br><br> Counter-Defendant. | CASE NO. 13cv296-WQH-BLM <br><br> ORDER |

HAYES, Judge:

    The matter before the Court is the Motion for Preliminary Injunction filed by Plaintiff Spiraledge, Inc. ("Spiraledge"). (ECF No. 28).

## I. Background

On February 5, 2013, Spiraledge initiated this action by filing a Complaint in this Court. (ECF No. 1). On March 12, 2013, Spiraledge filed a First Amended Complaint against Defendants SeaWorld Entertainment, Inc., SeaWorld Parks & Entertainment, Inc., SeaWorld Parks & Entertainment LLC, and Sea World LLC (collectively, "SeaWorld"). (ECF No. 9). Spiraledge alleges that it owns a trademark registered with the United States Patent and Trademark Office ("USPTO") for the mark "Aquatica" for online retail and wholesale store services featuring swimwear, clothing and accessories, and online directories featuring information relating to water-related activities. *Id.* ¶¶ 10-12. Spiraledge alleges that SeaWorld owns and operates a chain of water parks using the mark Aquatica and sells swimwear, clothing and accessories with the Aquatica mark prominently displayed on them. *Id.* ¶¶ 18-19. Spiraledge alleges that SeaWorld's use of the Aquatica mark constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition in violation of California Business and Professions Code § 17200. Spiraledge seeks compensatory damages, an award of SeaWorld's profits and disgorgement of SeaWorld's revenues, treble damages, punitive damages, injunctive relief, and attorneys' fees and costs.

On March 12, 2013, SeaWorld filed an Answer and Counterclaims against Spiraledge. (ECF No. 10). SeaWorld seeks cancellation of Spiraledge's trademark registration, alleging fraud in the procurement and improper registration.

On April 17, 2013, Spiraledge filed the Motion for Preliminary Injunction, accompanied by evidence. (ECF Nos. 28-30). Pursuant to Federal Rule of Civil Procedure 65(a), Spiraledge moves for a preliminary injunction prohibiting SeaWorld from using its Aquatica and "Aquatica SeaWorld's Waterpark" marks, or any other confusingly similar mark in connection with SeaWorld's water parks and associated goods and services.

On May 6, 2013, SeaWorld filed an opposition to the Motion for Preliminary

Injunction, accompanied by evidence and objections to certain evidence submitted by Spiraledge. (ECF Nos. 34-35, 37, 42).

On June 13, 2013, Spiraledge filed a reply in support of the Motion for Preliminary Injunction, accompanied by evidence, a response to SeaWorld's evidentiary objections, and objections to certain evidence submitted by SeaWorld. (ECF Nos. 48-50).

On June 20, 2013, SeaWorld filed a response to the new evidence submitted by Spiraledge with its reply, and a response to Spiraledge's evidentiary objections. (ECF Nos. 53-54).

On June 27, 2013, the Court heard oral argument on the motion.

**II. Discussion**

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

"[T]he person or entity seeking injunctive relief must demonstrate that irreparable injury is *likely* in the absence of an injunction. An injunction will not issue if the person or entity seeking injunctive relief shows a mere possibility of some remote future injury, or a conjectural or hypothetical injury." *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011) (quotations omitted); *see also Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm. Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more

than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.") (citations omitted). "Typically, monetary harm does not constitute irreparable harm.... Economic damages are not traditionally considered irreparable *because the injury can later be remedied by a damage award.*" *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851-52 (9th Cir. 2009) (citing, *inter alia, Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[I]t seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.... The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award.")). However, courts have "recognized that intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Rent-A-Center, Inc.*, 944 F.2d at 603 (citing *Regents of Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 519-20 (9th Cir. 1984)).

"Previously, the rule for preliminary injunctions in the trademark context was that courts presumed irreparable injury if the moving party showed likelihood of success on the merits." *BoomerangIt, Inc. v. ID Armor, Inc.*, No. 5:12-CV-0920, 2012 WL 2368466, at *3 (N.D. Cal. June 21, 2012) (citing *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999)). "Recent precedent, however, has cast doubt on that presumption. Specifically, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006) and *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 1000 (9th Cir. 2011) rejected similar presumptions in the patent and copyright contexts. In light of these cases and the Supreme Court's restatement of the standard for issuing a preliminary injunction in *Winter*, the viability of the presumption of irreparable harm in the trademark context is in question." *Id.*; *see also Flexible Lifeline Sys.*, 654 F.3d at 997 (noting that any "statements made in passing" in *Marlyn*

*Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th Cir. 2009) "does not bind this panel or constitute an affirmation of the presumption's continued vitality"). In *BoomerangIt*, the court concluded: "District courts in this Circuit that have addressed this issue have found that the governing law has changed, and a plaintiff is not granted the presumption of irreparable harm upon a showing of likelihood of success on the merits. Similarly, this court will not assume the existence of irreparable injury due to a showing of success on the merits." *BoomerangIt*, 2012 WL 2368466, at *4 (collecting cases); *see also Jumbo Bright Trading Ltd. v. Gap, Inc.*, No. CV12-8932, 2012 WL 5289784, at *1 (C.D. Cal. Oct. 25, 2012) ("As far as this court is aware, every district court in the Ninth Circuit that has examined the issue after *Flexible Lifeline*, along with a number that analyzed the issue before that case, has either found or at least suggested that irreparable harm cannot be presumed in trademark cases as well.") (collecting cases). This Court is persuaded by the reasoning of *BoomerangIt*, and this Court will not assume the existence of irreparable injury. *See Flexible Lifeline Sys.*, 654 F.3d at 997 ("If our past standard, which required a plaintiff to demonstrate at least a possibility of irreparable harm, is 'too lenient' [according to the Supreme Court in *Winter*], then surely a standard which presumes irreparable harm without requiring any showing at all is also 'too lenient.'"). Accordingly, Spiraledge "must *demonstrate* that irreparable injury is likely in the absence of an injunction." *Park Vill. Apartment Tenants Ass'n*, 636 F.3d at 1160 (emphasis added).

Spiraledge submits the declaration of its CEO, Avi Benaroya, in support of the Motion for Preliminary Injunction. (ECF No. 28-41). Benaroya states: "After we built out the website at Aquatica.com and launched the Aquatica brand in 2008, sales of the products took off." *Id*. ¶ 17. Spiraledge's revenues were $21,283 in 2008, $409,349 in 2009, $558,112 in 2010, $776,722 in 2011, $523,296 in 2012, and $188,012 in 2013 through April 7, 2013. *Id*. Benaroya states that when the USPTO issued the registration for the Aquatica mark to Spiraledge on December 27, 2011, "SeaWorld had been using its own Aquatica marks in connection with its water park in Orlando, Florida

1  ... and had built a substantial presence and engaged in extensive advertising online, such
2  that we had trouble continuing to grow Aquatica.com and Spiraledge's Aquatica
3  brand." *Id.* ¶ 18. Benaroya states: "SeaWorld's use of its own Aquatica marks that are
4  identical and confusingly similar to Spiraledge's Aquatica mark has led to numerous
5  instances of actual confusion involving consumers.... This has further hampered our
6  efforts to continue growing the Aquatica brand." *Id.* ¶ 19.

Attached to Benaroya's declaration are fifteen "written inquiries submitted through Aquatica.com [between December 1, 2008 and August 21, 2012] that appear to indicate confusion among customers between SeaWorld's Aquatica marks and Spiraledge's Aquatica mark." *Id.* ¶ 20; *see also* ECF No. 28-46. Each of the fifteen inquiries appear to involve customers directing inquiries through Spiraledge's website, Aquatica.com, intended for SeaWorld and related to SeaWorld's water park. The only inquiry related to clothing was a February 11, 2009 complaint from a person who purchased a "beautiful" "Aquativa [sic] SeaWorld's Waterpark Hooded Long [S]leeve Pocket in [F]ront sweatshirt from Your Park," but the "applique came off," which was "not acceptable." (ECF No. 28-46 at 4).

Spiraledge submits a declaration from Serrina Aguirre, an employee of an entity related to Spiraledge, who states that she received phone calls and written inquiries directed "to Aquatica.com customer service with issues related to and questions about SeaWorld's Aquatica water park(s) and associated goods and services." (Aguirre Decl. ¶ 3, ECF No. 28-47). Spiraledge also submits a declaration from Michele Mughannam, a former employee of an entity related to Spiraledge, who states that, from April 2009 through May 2010, she marketed Spiraledge's Aquatica products directly to potential wholesale customers. She states:

> [A]pproximately half of the prospective buyers I reached on the telephone asked in the initial conversation if the Aquatica products I was marketing and selling were made by SeaWorld or were related to SeaWorld's Aquatica water parks, or if [Spiraledge's predecessor] was part of or related to SeaWorld. I repeatedly had to explain to them that there was no connection between the companies or their products.

(Mughannam Decl. ¶ 2, ECF No. 28-48).

Spiraledge contends:

> SeaWorld's extensive use of its infringing marks online to advertise its water parks and associated goods and services has significantly harmed Spiraledge's Aquatica business, and if it is not stopped, will render the business invisible in the marketplace. For example, when searching for 'aquatica' on Google, seven of the top eight results, including one paid ad, are SeaWorld websites or related to SeaWorld's Aquatica water parks. Meanwhile, because of SeaWorld's extensive use, Spiraledge's Aquatica.com is pushed to the second page. When searching for 'aquatica clothing' on Google, the first and third results are SeaWorld websites surrounding [Spiraledge's website] SwimOutlet.com in the second position.

(ECF No. 28-1 at 12 (citing Steinberg Decl., Exs. 15, 16, ECF Nos. 28-17, 28-18)).

Although "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm," *Stuhlbarg International Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001), "[s]peculative injury does not constitute irreparable injury." *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984). After review of the evidence filed in support of the Motion for Preliminary Injunction, the Court finds that Spiraledge has failed to submit probative, nonspeculative evidence that Spiraledge has lost, or likely will lose, prospective customers or goodwill due to SeaWorld's use of the Aquatica mark.

The statements of Spiraledge's CEO indicating that SeaWorld has "hampered [Spiraledge's] efforts to continue growing the Aquatica brand," Benaroya Decl. ¶ 19, ECF No. 28-41, are conclusory and without citation to specific evidence; accordingly, these statements are insufficient to support a finding of irreparable injury. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) ("affidavits [that] are conclusory and without sufficient support in fact" will not support a finding of irreparable injury); *see also Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (insufficient showing of irreparable injury when "the principal shareholder of plaintiff's parent corporation ... stated [in an affidavit] that defendants' use of exclusivity provisions caused plaintiff's market share to decrease," because the affidavit "provided only conclusory statements and [the affiant] was an

interested party").

Spiraledge has presented no evidence indicating that Spiraledge has suffered, or likely will suffer, irreparable injury caused by SeaWorld's internet presence, including SeaWorld's positioning in search engine results. Spiraledge has cited no authority indicating that irreparable injury may be found or presumed based upon positioning in Google searches. Spiraledge has presented no evidence indicating that it has lost sales or it likely will lose sales due to SeaWorld's positioning in Google searches or that the amount of those lost sales could not be remedied by monetary damages. Likewise, Spiraledge has failed to present evidence indicating that it has suffered, or likely will suffer, irreparable injury as a result of misdirected phone calls and internet inquiries. *Cf. Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991) ("[Plaintiff] has not shown that these misdirected callers were prospective purchasers of [plaintiff]'s products.... [T]here is no reason to believe that confusion represented by the phone calls could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation.").

A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune*, 762 F.2d at 1377 (citation omitted); *see also id.* ("Where no new harm is imminent, and where no compelling reason is apparent, the district court was not required to issue a preliminary injunction against a practice which has continued unchallenged for several years."). SeaWorld opened its first water park under the Aquatica name in Orlando, Florida on March 1, 2008. (Brown Decl. ¶ 3, ECF No. 34-2). Spiraledge obtained its registration for the Aquatica mark on December 27, 2011. (Benaroya Suppl. Decl. ¶ 3, ECF No. 48-9). SeaWorld opened its second Aquatica water park in San Antonio, Texas on May 19, 2012. (Brown Decl. ¶ 3, ECF No. 34-2). Spiraledge initiated this action by filing a Complaint in this Court on February 5, 2013. (ECF No. 1). Spiraledge filed the Motion for Preliminary Injunction on April 17, 2013. (ECF No. 28).

Spiraledge's CEO, Avi Benaroya, submitted a declaration stating that the delay

of over 13 months between the date Spiraledge obtained its Aquatica registration and the filing of this lawsuit was due to "the withdrawal of our trademark litigation counsel and the necessity of finding new trademark litigation counsel," and "settlement negotiations with SeaWorld." (Benaroya Suppl. Decl. ¶ 2, ECF No. 48-9). SeaWorld submits an affidavit from its attorney stating that the majority of the "settlement negotiations" referenced by Benaroya consisted of SeaWorld's attorney repeatedly contacting Spiraledge's attorney between June 30, 2012 and November 1, 2012, seeking Spiraledge's "consent to the registration of SeaWorld's Aquatica mark since this mark had been coexisting with [Spiraledge]'s Aquatica retail swimwear website without confusion for years." (Anderson Decl. ¶ 4, ECF No. 54-2). There is no evidence that, prior to the filing of the Complaint on February 5, 2013, any Spiraledge attorney or representative asserted that Spiraledge had been suffering irreparable injury from SeaWorld's use of its Aquatica mark. Even accepting Benaroya's explanation of the delay, the Court finds that Spiraledge's delay between obtaining the registration and filing suit and the Motion for Preliminary Injunction further supports the conclusion that Spiraledge has failed to demonstrate that irreparable injury is likely in the absence of an injunction. *See Oakland Tribune*, 762 F.2d at 1377; *see also Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213-14 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1090 (C.D. Cal. 1999) ("[Plaintiff]'s [five-month] delay in seeking injunctive relief further demonstrates the lack of any irreparable harm."), *aff'd*, 202 F.3d 278 (9th Cir. 1999); *Valeo Intellectual Prop., Inc. v. Data Dep't Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) ("A three-month delay in seeking injunctive relief is inconsistent with [plaintiff]'s insistence that it faces irreparable harm.").

The Court finds that Spiraledge has failed to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Park Vill. Apartment Tenants Ass'n*, 636 F.3d at 1160 (quotation omitted). Because Spiraledge has failed to meet its burden of

demonstrating that irreparable injury is likely in the absence of an injunction, the Court "need not decide whether [Spiraledge] is likely to succeed on the merits." *Oakland Tribune*, 762 F.2d at 1376 ("Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury. Because the [plaintiff] has not made that minimum showing we need not decide whether it is likely to succeed on the merits.") (citations omitted); *see also Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987) (same).

### III. Conclusion

IT IS HEREBY ORDERED that the Motion for Preliminary Injunction is DENIED. (ECF No. 28).

DATED: July 9, 2013

**WILLIAM Q. HAYES**
United States District Judge