KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
LAWRENCE Y. ISER (SBN 094611)
  liser@kwikalaw.com
GREGORY P. KORN (SBN 205306)
  gkorn@kwikalaw.com
GREGORY S. GABRIEL (SBN 239902)
  ggabriel@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone:  310.566.9800
Facsimile:  310.566.9850

Attorneys for
SeaWorld Entertainment, Inc.;
SeaWorld Parks & Entertainment, Inc.;
SeaWorld Parks & Entertainment LLC
and SeaWorld LLC

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPIRALEDGE, INC., | Case No. 13CV0296  BAS-BLM |
| Plaintiff, | |
| vs. | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [REDACTED]** |
| SEAWORLD ENTERTAINMENT, INC.; SEAWORLD PARKS & ENTERTAINMENT, INC.; SEAWORLD PARKS & ENTERTAINMENT LLC, SEAWORLD LLC; and DOES 1-10, inclusive, | [Declaration of Gregory Gabriel Filed Concurrently Herewith] |
| Defendants. | Judge:      Judge Cynthia Bashant Hearing Date:      August 4, 2014 Time:      10:30 am Crtrm.:      4B |
| SEAWORLD PARKS & ENTERTAINMENT, INC.; SEAWORLD PARKS & ENTERTAINMENT LLC, SEA WORLD LLC; | NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |
| Cross-Complainants, vs. | Trial Date:      December 3, 2014 |
| SPIRALEDGE, INC., | |
| Cross-Defendant. | |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................ 1

II.    SPIRALEDGE USES THE AQUATICA MARK IN CONNECTION
       WITH AQUATIC-RELATED PRODUCTS AND SERVICES ...................... 3

III.   THE AQUATICA MARK IS INVALID AS A MATTER OF LAW ............. 4

       A.     Descriptive Trademarks Are Unenforceable .......................... 4

       B.     The Presumption Of Validity Afforded The AQUATICA
              Registration Is Easily Overcome ............................................ 5

       C.     AQUATICA Is Descriptive Pursuant To The Doctrine Of
              Foreign Equivalents ............................................................... 7

              1.     "Aquatica" Is The Phonetic Equivalent Of "Acuatica,"
                     Which Is The Spanish Word For "Aquatic" ................... 7

              2.     "Aquatica" Is Latin For "Aquatic" ............................. 11

       D.     The Erroneous Decision By A USPTO Examiner To Register
              AQUATICA Is Entitled To No Deference ............................... 12

       E.     AQUATICA Is Descriptive Even Without Resort To The
              Doctrine Of Foreign Equivalents .......................................... 14

       F.     Third Party Use Of AQUATICA Further Shows The
              Descriptiveness Of The Mark ................................................ 16

       G.     Spiraledge Cannot Establish Secondary Meaning In The
              AQUATICA Mark As A Matter Of Law .................................. 18

IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON
       SPIRALEDGE'S TRADEMARK CLAIMS AND SEAWORLD'S
       CANCELLATION CLAIM ................................................................... 20

**KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP**
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>FEDERAL CASES</u>

4

5
*555-1212.com, Inc. v. Communication House International, Inc.*
157 F. Supp. 2d 1084 (N.D. Cal. 2001) .....................................................passim

6
*American Heritage Life Ins. v. Heritage Life Ins. Co.*
494 F. 2d 3 (5th Cir. 1974)..................................................................7

7

8
*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*
174 F.3d 1036 (9th Cir. 1999)..............................................................4

9
*Cleary v. News Corp.*
30 F.3d 1255 (9th Cir.1994)...............................................................20

10

11
*Entrepreneur Media, Inc. v. Smith*
279 F.3d 1135 (9th Cir. 2002).........................................................4, 10

12
*Gracie v. Gracie*,
217 F. 3d 1060 (9th Cir. 2000).............................................................21

13

14
*Hickory Farms, Inc. v. Snackmasters, Inc.*
500 F. Supp. 2d 789 (N.D. Ill. 2007) .....................................................11

15
*Ideal World Marketing, Inc. v. Duracell, Inc.*
15 F. Supp. 2d 239 (E.D.N.Y. 1998).......................................................10

16

17
*In re Bayer Aktiengesellschaft*
488 F.3d 960 (Fed. Cir. 2007) ...........................................................14

18
*In re MBNA America Bank, N.A.*
340 F. 3d 1328 (Fed. Cir. 2004) ............................................................5

19

20
*In re Patent & Trademark Servs. Inc.*
49 U.S.P.Q. 2d 1537 (T.T.A.B. 1998)......................................................5

21
*In Re Petroglyph Games, Inc.*
91 U.S.P.Q. 2d 1332 (T.T.A.B. 2009)......................................................12

22

23
*In re Styleclick.com Inc.*
57 U.S.P.Q. 2d 1445 (T.T.A.B. 2001)......................................................5

24
*In re W.A. Sheaffer Pen Co.*
158 F. 2d 390 (C.C.P.A.)..................................................................10

25

26
*Lahoti v. VeriCheck, Inc.*,
586 F.3d 1190 (9th Cir. 2009) ............................................................17

27
*Levi Strauss & Co. v. Blue Bell, Inc.*
778 F.2d 1352 (9th Cir. 1985) ...........................................................19

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*Liquid Controls Corp. v. Liquid Control Corp.*
   802 F. 2d 934 (7th Cir. 1986)..................................................................6

*McGraw–Hill Publ'g Co. v. American Aviation Assocs.*
   117 F.2d 293 (D.C.Cir. 1940) ..............................................................10

*Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.,*
   175 F.3d 266 (2d Cir. 1999)..................................................................7

*Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772,*
   396 F.3d 1369 (Fed. Cir. 2005) .............................................................7

*PaperCutter, Inc. v. Fay's Drug Co., Inc.*
   900 F. 2d 558 (2d Cir. 1990)...........................................................6, 18

*Pro-Line Door Sys., Inc.*
   83 F. 3d 169 (7th Cir. 1996) .................................................................6

*Retail Serv., Inc. v. Freebies Publ'g*
   364 F.3d 535 (4th Cir.2004)................................................................11

*Security Center, Ltd. v. First Nat'l Security Centers*
   750 F. 2d 1295 (5th Cir. 1985)............................................................17

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*
   59 F. 3d 902 (9th Cir. 1995)...........................................................6, 18

*Shaw-Barton, Inc. v. John Baumgarth Co.*
   313 F. 2d 167 (7th Cir. 1963)................................................................6

*Shoe Corporation of America v. Juvenile Shoe Corporation*
   266 F. 2d 793 (C.C.P.A. 1959)............................................................17

*Two Pesos Inc. v. Taco Cabana, Inc.*
   505 U.S. 763 (1992) .............................................................................4

*Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.*
   644 F. 2d 769 (9th Cir. 1981).................................................................6

*Weiss Noodle Co. v. Golden Cracknel & Specialty Co.,*
   290 F.2d 845 (C.C.P.A. 1961)...............................................................8

*Yellow Cab of Sacramento v. Yellow Cab of Elk Grove*
   419 F.3d 925 (9th Cir. 2005).............................................................4, 5

*Zobmondo Entertainment, LLC v. Falls Media, LLC*
   602 F.3d 1108 (9th Cir. 2010)............................................................17

*Zucrum Foods, LLC v. Marquez Bros., Int'l, Inc.*
   2011 WL 2118653 (N.D. Cal. 2011)......................................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1

## **FEDERAL STATUTES**

2    15 U.S.C. § 1057(b) ....................................................................................... 6

3    15 U.S.C. § 1114(1) ....................................................................................... 4

4

5

## **OTHER AUTHORITIES**

6    California Business and Professions Code § 17200 ...................................... 20

7    McCarthy on Trademarks § 30:108 ............................................................. 20

8    McCarthy on Trademarks, § 11:11, 11:13 ..................................................... 4

9    McCarthy on Trademarks, § 11:5-8 ............................................................... 4

10   McCarthy on Trademarks, § 11:67 ................................................................. 9

11   McCarthy on Trademarks, § 11:69 ............................................................... 17

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP**
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# I.  **INTRODUCTION**

Plaintiff Spiraledge, Inc. ("Spiraledge") owns a trademark registration for the use of AQUATICA in connection with online sales of clothing and swimming accessories and an online directory of places to swim.  Spiraledge alleges that each of Defendants, collectively referred to as "SeaWorld," are infringing that mark by operating three "Aquatica SeaWorld's Waterpark" amusement parks in Orlando, San Antonio, and San Diego.  Because Spiraledge's trademark is invalid as a matter of law, its claims fail, and summary judgment should be granted.

It is axiomatic that not all trademarks are enforceable.  Although so-called fanciful, arbitrary, and suggestive marks are enforceable *per se*, generic terms are never protected, and descriptive marks, which directly convey a characteristic or quality of a product or service, cannot be enforced absent proof that consumers singularly associate the mark with the plaintiff, known as "secondary meaning." Indisputably, AQUATICA is a descriptive mark as used in connection with Spiraledge's self-described "aquatic brand" of swimwear and swim accessories. "Aquatica" is the phonetic equivalent of the Spanish word "acuatica," which translates to "aquatic" in English.  Under the doctrine of "foreign equivalents," the distinctiveness of a trademark is analyzed by looking to the English equivalent, even when the mark is not literally a foreign word but instead its phonetic equivalent. "Aquatica" is also the Latin word for "aquatic."  Thus, if "aquatic" describes a quality or characteristic of Spiraledge's products, then so too does "aquatica." Needless to say, few if any words are more descriptive of Spiraledge's business than "aquatic."

Even without invoking the doctrine of foreign equivalents, Federal Circuit case law compels a finding that AQUATICA is an invalid descriptive mark.  In a case that is uniquely on point, the Federal Circuit agreed with the USPTO that ASPIRINA, formed by adding the letter "a" to the generic term "aspirin," was not protectable.  The Court found that the similarities in sound, appearance, and

1  meaning between "aspirin" and "aspirina" would lead consumers to understand that
2  "aspirina" was describing the same product.

3      Here too, adding the letter "a" to "aquatic" does not transform a
4  commonplace descriptive word into a distinctive trademark. The visual impressions
5  of "aquatica" and "aquatic" are essentially identical, and consumers would
6  recognize <u>both</u> words as describing the aquatic nature of Spiraledge's swimwear and
7  swimming accessories. Spiraledge's own top executives admit as much, referring to
8  the AQUATICA mark as: ███████████; having "██████████████████
9  ███████; and having the ability to "████████████████████████
10 ████████████.

11     Further evidencing the descriptive nature of "aquatica" are the numerous
12 third-parties which use the mark, including several aquarium supply stores, a pond
13 construction and maintenance company, a dive shop, and a manufacturer of
14 underwater digital camera housings. The fact that so many have chosen
15 AQUATICA to describe their own aquatics-related business supports the inference
16 that consumers will view the mark as describing Spiraledge's products.

17     Although descriptive marks like AQUATICA can be enforced upon a
18 showing of secondary meaning, Spiraledge cannot come close to meeting its burden
19 here to prove secondary meaning. In order to enforce the mark against SeaWorld,
20 Spiraledge must establish that it acquired secondary meaning <u>before</u> SeaWorld
21 began using the mark. Given that SeaWorld began using the mark in commerce
22 first, Spiraledge cannot make this showing as a matter of law. Regardless,
23 Spiraledge could not even establish secondary meaning now, much less before
24 SeaWorld began using the mark. Spiraledge has spent virtually nothing marketing
25 its AQUATICA products and services and has not reached anything close to a level
26 of market penetration sufficient to create the inference that consumers singularly
27 associate the mark with it.

28     Because AQUATICA merely describes Spiraledge's products and services

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  and is lacking secondary meaning, the mark is invalid as a matter of law and cannot

2  provide a basis for Spiraledge's trademark claims against SeaWorld.  Accordingly,

3  SeaWorld respectfully requests that the Court grant summary judgment on

4  Spiraledge's claims, as well as SeaWorld's counter-claim against Spiraledge seeking

5  cancellation of its AQUATICA registration.

## II.    SPIRALEDGE USES THE AQUATICA MARK IN CONNECTION WITH AQUATIC-RELATED PRODUCTS AND SERVICES

8      On February 8, 2005, Spiraledge, through its predecessor Club Swim, Inc.,

9  filed an Intent-To-Use trademark application for AQUATICA for use in connection

10  with: "on-line retail store and wholesale store services featuring swimwear, clothing

11  and accessories; [and] online directories featuring information relating to water-

12  related activities."  Declaration of Gregory Gabriel ("Gabriel Decl."), Exh. A.[1]  But

13  Spiraledge did not actually begin using the mark in commerce until several years

14  later in September 2008.  *Id.*, Exh. B.  In the interim, SeaWorld began using the

15  mark in connection with a waterpark in Orlando, Florida named Aquatica

16  SeaWorld's Waterpark, which opened in March 2008 – six months before

17  Spiraledge began its use in commerce.  *See*, Dkt. No. 34, Atch. 2, ¶ 3.

18      At the time Spiraledge began selling products on Aquatica.com, it offered

19  both men's and women's swimwear, as well as swim accessories and a directory of

20  places to swim on the website.  Gabriel Decl., Exh. C.  Today the product and

21  service offerings on Aquatica.com remain virtually unchanged and include: four

22  different types of men's swimsuits; six different types of women's swimsuits; a

23  children's rash guard; and various swimming accessories including goggles, swim

24  caps, ear plugs, and kickboards.  Gabriel Decl., Exh D.   Spiraledge's "places to

25  swim" directory consists of a searchable database of swimming pools and

---

27  [1] An Intent-To-Use application allows the applicant to reserve rights in a trademark pending actual use and then obtain a priority date as of the date of the filing of the application as opposed to the later date of actual use.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  waterparks throughout the United States.  *Id.*, pp 25, 26.

2  **III.   THE AQUATICA MARK IS INVALID AS A MATTER OF LAW**

3      **A.   Descriptive Trademarks Are Unenforceable**

4      A trademark holder must prove ownership of a valid mark in order to prevail

5  on a claim for trademark infringement.  15 U.S.C. § 1114(1); *Yellow Cab of*

6  *Sacramento v. Yellow Cab of Elk Grove*, 419 F.3d 925, 928 (9th Cir. 2005) ("A

7  necessary concomitant to proving infringement is, of course, having a valid

8  trademark.") (citation and internal quotations omitted).

9      The enforceability of a trademark depends, *inter alia*, on its distinctiveness.

10  Courts classify trademarks, from most distinctive to least distinctive, as fanciful,

11  arbitrary, suggestive, descriptive, and generic.  *Brookfield Commc'ns, Inc. v. W.*

12  *Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999).  "The strongest marks—

13  that is, those which receive the maximum trademark protection—are 'arbitrary' or

14  'fanciful.'"  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002).

15  Fanciful trademarks are words "coined" for the sole purpose of functioning as a

16  trademark, such as Exxon and Kodak.  McCarthy on Trademarks, § 11:5-8.

17  Arbitrary marks are common words that do not suggest or describe a quality or

18  characteristic of the product, such as "Omega" for watches and "Apple" for

19  computers.  McCarthy on Trademarks, § 11:11, 11:13.  Arbitrary and fanciful marks

20  are inherently distinctive and are accorded the most protection under trademark law.

21  *Two Pesos Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

22      "The weakest marks, entitled to no trademark protection, are 'generic.'  In

23  between lie 'suggestive' and 'descriptive' marks; suggestive marks have the greater

24  strength of the two."  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th

25  Cir. 2002).

26      A "suggestive" term "suggests rather than describes an ingredient, quality, or

27  characteristic of the goods and requires imagination, thought, and perception to

28  determine the nature of the goods."  *555-1212.com, Inc. v. Communication House*

*International, Inc.*, 157 F. Supp. 2d 1084, 1087 (N.D. Cal. 2001).  Suggestive marks are inherently distinctive and may be protected without a showing of secondary meaning.  *Taco Cabana*, 505 U.S. at 768.

"A mark is merely descriptive if it immediately conveys information concerning a quality or characteristic of the product or service."  *In re MBNA America Bank, N.A.*, 340 F. 3d 1328, 1332 (Fed. Cir. 2004); *see also*, *PaperCutter*, 900 F. 2d at 562 (stating that descriptive terms "convey an immediate idea of some characteristic or attribute of the product").  "A descriptive mark can receive trademark protection if it has acquired distinctiveness by establishing 'secondary meaning' in the marketplace."  *Yellow Cab*, 419 F.3d at 927.  But absent a showing of secondary meaning, descriptive trademarks are unenforceable.  *Id*.

The USPTO's Trademark Trial and Appellate Board ("TTAB") has clarified the standard for descriptive marks in two important ways.  First, "[i]t is not necessary that a term describe all of the properties of the goods and/or services in order for it to be considered merely descriptive thereof; rather, it is sufficient if the term describes a significant attribute or feature about them."  *In re Styleclick.com Inc.*, 57 U.S.P.Q. 2d 1445, 1447 (T.T.A.B. 2001) (emphasis added); *see also In re Patent & Trademark Servs. Inc.*, 49 U.S.P.Q. 2d 1537, 1538-1539 (T.T.A.B. 1998).  Second, "the question of whether a mark is merely descriptive must be determined not in the abstract, that is, not by asking whether one can guess, from the mark itself, considered in a vacuum, what the goods or services are."  *In re Patent & Trademark Servs.*, 49 U.S.P.Q. 2d at 1539; *see also Styleclick.com*, 57 U.S.P.Q. 2d at 1447.  Rather, the question is whether, "when the mark is seen on the goods or services, it immediately conveys information about their nature."  *In re Patent & Trademark Servs.*, 49 U.S.P.Q. 2d at 1539.

**B.    The Presumption Of Validity Afforded The AQUATICA Registration Is Easily Overcome**

Although Spiraledge's registered trademark is accorded a presumption of

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  validity, 15 U.S.C. § 1057(b), the presumption merely places an initial burden upon

2  SeaWorld to come forward with evidence of invalidity.  As stated by the Court in

3  *555-1212.com, Inc. v. Communication House International, Inc.*, 157 F. Supp. 2d

4  1084 (N.D. Cal. 2001):

5       "The presumption of validity that federal registration confers . . .

6       evaporates as soon as evidence of invalidity is presented . . . . <u>Its only</u>

7       <u>function is to incite such evidence and when the function has been</u>

8       <u>performed the presumption drops out of the case</u>."

9  *Id.* at 1089 (all emphasis added unless otherwise noted) (quoting *Door Sys., Inc. v.*

10  *Pro-Line Door Sys., Inc.*, 83 F. 3d 169 (7th Cir. 1996)); *see also, Liquid Controls*

11  *Corp. v. Liquid Control Corp.*, 802 F. 2d 934, 936, 937 n.2 (7th Cir. 1986) (the

12  presumption of validity "bursts" once the accused infringer presents evidence of

13  invalidity).  The presumption of validity does <u>not</u> impose a heightened evidentiary

14  standard.  An accused infringer need only establish the invalidity of a registered

15  mark by a preponderance of the evidence.  *Vuitton Et Fils S.A. v. J. Young*

16  *Enterprises, Inc.*, 644 F. 2d 769, 775-776 (9th Cir. 1981) (rejecting that the

17  presumption must be overcome by clear and convincing evidence and holding that

18  the law "now requires only a preponderance of the evidence"); *PaperCutter, Inc. v.*

19  *Fay's Drug Co., Inc.*, 900 F. 2d 558, 563 (2d Cir. 1990).

20      Courts have described the presumption of validity as "easily overcome,"

21  *Shaw-Barton, Inc. v. John Baumgarth Co.*, 313 F. 2d 167, 169 (7th Cir. 1963), and

22  have not hesitated to invalidate trademarks registered by the USPTO.  *See, e.g.*, *Self-*

23  *Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F. 3d 902

24  (9th Cir. 1995) (affirming the District Court's cancellation of several registered

25  marks); *Bada Co. v. Montgomery Ward & Co.*, 426 F. 2d 8 (9th Cir. 1970) (finding

26  registered trademarks invalid and reversing District Court); *555-1212.com*, 157 F.

27  Supp. 2d 1084 (granting summary judgment on basis that the registered trademark

28  "555-1212.com" was invalid); *PaperCutter, Inc. v. Fay's Drug, Co., Inc.*, 900 F. 2d

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP<br>808 WILSHIRE BOULEVARD, 3RD FLOOR<br>SANTA MONICA, CALIFORNIA 90401<br>TEL 310.566.9800 • FAX 310.566.9850

1  558 (2nd Cir. 1990) (cancelling registered trademark); *American Heritage Life Ins. v.*

2  *Heritage Life Ins. Co.*, 494 F. 2d 3, 13-14 (5th Cir. 1974) (reversing District Court's

3  refusal to cancel mark).

4       For the reasons discussed below, the presumption of validity is likewise

5  "easily overcome" in this case.  AQUATICA is clearly invalid and unenforceable

6  against SeaWorld.

7      **C.**    **AQUATICA Is Descriptive Pursuant To The Doctrine Of Foreign**

8         **Equivalents**

9       Pursuant to the doctrine of "foreign equivalents," foreign words are

10  "translated into English to determine genericness, descriptiveness, as well as

11  similarity of connotation in order to ascertain confusing similarity with English

12  word marks."  *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee*

13  *En 1772*, 396 F.3d 1369, 1377 (Fed. Cir. 2005).  Under this doctrine, if an English

14  word is descriptive of a product, so too is its foreign equivalent.  *See, Otokoyama*

15  *Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266 (2d Cir. 1999) (compiling

16  foreign terms held unenforceable once translated).  "The test is whether, to those

17  American buyers familiar with the foreign language, the word would have a

18  descriptive connotation."  *Zucrum Foods, LLC v. Marquez Bros., Int'l, Inc.*, 2011

19  WL 2118653 (N.D. Cal. 2011).

20      **1.**    **"Aquatica" Is The Phonetic Equivalent Of "Acuatica,"**

21         **Which Is The Spanish Word For "Aquatic"**

22      "Acuatica" is the Spanish word for "aquatic."  Gabriel Decl., Exh. E.  As the

23  USPTO noted when it initially refused to register Spiraledge's AQUATICA mark

24  because of an earlier registration for ACUATICA on similar goods: "[t]he two

25  marks [acuatica and aquatica] are phonetic equivalents."  Gabriel Decl., Exh. F, p.

26  36.  When a mark is a phonetic equivalent of a foreign word, the mark must be

27  translated to the English equivalent of that word before determining its strength.

28      In *Weiss Noodle Co. v. Golden Cracknel & Specialty Co.*, 290 F.2d 845

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

(C.C.P.A. 1961), defendant obtained a registration for HA-LUSH-KA for use on egg noodle products, which plaintiff sought to cancel on the grounds that the mark is descriptive. The USPTO cancelled the registration on the ground that HA-LUSH-KA "is nothing more than a hyphenated, phonetically spelled version of the Hungarian word "haluska" [pronounced halushska] which means, inter alia, noodles and as such is the common descriptive name for egg noodles." *Id*. at 846. On appeal to the Court of Customs and Patent Appeals ("C.C.P.A."), the appellant argued that "there is no such word as 'Ha-Lush-Ka' in the Hungarian language." *Id*. In rejecting this argument the court held that:

> "[w]hile [appellant's argument] is true in the narrowest possible sense, the argument is without substance. The Hungarian word 'haluska' is pronounced as though it were spelled 'Halushka' (to an English-speaking person) and <u>merely to hyphenate the phonetic version does not destroy its identity</u>."

*Id*. The court further stated that: "[i]n the instant case registration of the Hungarian name for noodles, 'haluska' or its phonetic equivalent in English, whether or not hyphenated, would be contrary to law for no one can be granted the exclusive use of the name of an article, either in our native tongue or its equivalent in any foreign language." *Id*. at 847. The court concluded that "[t]he registration must therefore be cancelled." *Id*. at 848.

The United States Census Bureau reported that as of 2011 nearly 38 million Americans speak Spanish and that it is the second most spoken language in the country. Gabriel Decl., Exh. G. Accordingly, to determine whether AQUATICA is descriptive, as SeaWorld contends, or suggestive, as Spiraledge will argue, the Court must consider whether the English equivalent, "aquatic," describes a quality or characteristic of Spiraledge's aquatic-related products and services. Obviously, it does.

The principal test for determining whether a mark is descriptive is referred to

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

as the "imagination" test.  McCarthy on Trademarks, § 11:67.  "The more

imagination that is required on the customer's part to get some direct description of

the product from the term, the more likely the term is suggestive, not descriptive."

McCarthy on Trademarks, § 11:67, p. 11-145.  Courts often cite Judge Friendly's

formulation of the "imagination" test in the Second Circuit's *Abercrombie & Fitch*

opinion:

> "A term is suggestive if it requires imagination, thought and perception
> to reach a conclusion as to the nature of goods.  A term is descriptive if
> it forthwith conveys an immediate idea of the ingredients, qualities or
> characteristics of the goods."

*PaperCutter*, 900 F. 2d at 563 (quoting *Abercrombie & Fitch*, 537 F. 2d at 11).

In *PaperCutter*, the Second Circuit offered "Gleem" for toothpaste as an

example of a suggestive mark.  *Id.*  The example is apt.  Suggestive marks like

"Gleem" do not immediately convey the characteristics of a product.  Rather, an

inferential leap, some meaningful degree of imagination, is required to understand

the relationship between the product and its name.

Here, no imagination, and no inferential leap, is needed to connect "aquatic"

with Spiraledge's aquatic-related products and services.  Every AQUATICA

product sold by Spiraledge is designed to be used in connection with the aquatic

sport of swimming and its directory of places to swim is a directory of places at

which there are aquatic activities.  Gabriel Decl., Exh. D.  Spiraledge sells non-

aquatic related products, such as running and yoga products, but has chosen to do so

websites other than aquatica.com because they lack the aquatic connection.  Gabriel

Decl., Exh. H.

In fact, Spiraledge itself describes AQUATICA as "<u>a new aquatic brand</u>

<u>focused on delivering you superior water related goods and services</u>."  Gabriel

Decl., Exh. D, p. 27.  Avi Benaroya, Spiraledge's CEO, also describes AQUATICA

as "████████████████████" that has "████████████████████."

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Confidential Declaration of Gregory Gabriel ("Conf. Gabriel Decl."), Exh A (Benaroya Depo., p. 44:10-17). No word more directly describes a quality or characteristic of an "aquatic brand" than the word "aquatic." No imagination whatsoever is needed to make this connection. *See, e.g.*, *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 (9th Cir. 2002) (finding that ENTREPRENEUR was descriptive of magazine "geared towards small businesses and their owners" because it "describe[d] both the subject matter and the intended audience of the magazine").

"Aquatic" is, in fact, far less imaginative and more descriptive when applied to a swimwear line than numerous marks deemed descriptive by the Ninth and Second Circuits and the C.C.P.A. *See, e.g.*, *Bada*, 426 F. 2d at 11 (holding that "Micro-Precision" is descriptive as applied to a product for balancing automobile tires); *In re W.A. Sheaffer Pen Co.*, 158 F. 2d 390 (C.C.P.A.) (affirming the USPTO's decision that "Fineline" was a descriptive term for pencils); *555-1212.com*, 157 F. Supp. 2d at 1089 (holding that consumers' familiarity with "555-1212" as a telephone information system rendered "555-1212.com" descriptive); *Ideal World Marketing*, *Inc. v. Duracell, Inc.* 15 F. Supp. 2d 239 (E.D.N.Y. 1998) (finding "PowerCheck" descriptive of alkaline battery that allows verification of remaining power); *Black & Decker Corp. v. Dunsford*, 944 F. Supp. 220, 225 (S.D.N.Y. 1996) (finding "Snakelight" descriptive of a light that was "flexible, and can be bent or twisted").

Permitting a registration for the use of the word "aquatic" in connection with an "aquatic brand" of swimwear and swim accessories to stand is analogous to permitting Boeing to register "aviation" for use on planes, or General Motors to register "automotive" for use on cars. Trademark law does not permit such manifestly descriptive terms to be appropriated by a single company. *See e.g.*, *McGraw–Hill Publ'g Co. v. American Aviation Assocs.*, 117 F.2d 293, 295 (D.C.Cir. 1940) (rejecting use of "aviation" in connection with a magazine about aeronautics.)

Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

## 2. "Aquatica" Is Latin For "Aquatic"

"Aquatica" is also the Latin word for "aquatic." Gabriel Decl., Exh. I. Spiraledge has previously argued that the doctrine of foreign equivalents has no application to a "dead" language such as Latin. That is true as a general rule, but not under the current circumstances, where the word "aquatica" is in current use. The USPTO's Trademark Manual of Examining Procedure ("TMEP") states:

> Latin is generally considered a dead language. However, if evidence shows that a Latin term is still in use by the relevant purchasing public (i.e. if the term appears in current dictionaries or news articles), then this Latin term would not be considered dead.

*See* Gabriel Decl., Exh. J, p. 56 (TMEP § 1207 (b)(vi)(B)).

The Latin word "aquatica" remains in use today. For example, the term is used to indicate the taxonomy of: (1) water based plant species such as Ipomoea Aquatica; Pachira Aquatica; Zizania Aquatica and Planera Aquatica; (2) animals such as the underwater spider Argyoneta Aquatica; (3) organisms like the freshwater based bacteria Budvicia Aquatica and Rheineimera Aquatica. *Id*., Exh. K. An English version of the Merriam Webster Dictionary also references "aquatica" when providing the scientific names of plants, for example. "Wild rice" is defined as "a tall aquatic North American perennial grass (Zizania Aquatica) that yields an edible grain." *Id*., Exh. L. "Water fennel" is defined as "a European poisonous herb (Oenanthe Aquatica) with fibrous roots." *Id*.

The Latin word "aquatica" is also commonly used in connection with water-related products and services.[2] For example: (1) there no less than five aquarium

---

[2] Internet evidence is generally admissible and may be considered for purposes of evaluating a trademark. *See, Retail Serv., Inc. v. Freebies Publ'g*, 364 F.3d 535, 545–46 (4th Cir.2004) (considering use of "freebies" on numerous websites as evidence of consumer perception of the disputed mark); *see also, Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F. Supp. 2d 789, 800-801 (N.D. Ill. 2007) (rejecting plaintiff's argument that defendant's website evidence of third party

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   and/or fish supply stores named "Aquatica"; (2) a sixth aquarium supply store

2   named "Aquatica Gallery"; (3) a breeder of tropical fish named "Aquatica Tropicals,

3   Inc."; (4) a pool management service named "Aquatica Pool Management, Inc."; (5)

4   a manufacturer of hot tubs selling an "Aquatica 10" hot tub; (6) a dive and surf shop

5   named "Aquatica"; (7) a charter boat service named "Aquatica"; (8) a manufacturer

6   of underwater housing for digital cameras named "Aquatica Digital"; (9) a company

7   providing private pond construction and maintenance services named "Aquatica

8   Pond Services"; and (10) a manufacturer of bathtubs and sinks named "Aquatica."

9   Gabriel Decl. Exh. M.

10       Given the multitude of current uses of the Latin word "aquatica," the Court

11   should reject Spiraledge's "dead language" argument.  Accordingly, the Court

12   should apply the doctrine of foreign equivalents and translate "aquatica" to

13   "aquatic" and hold that Spiraledge's mark is descriptive as a matter of law.

### D.       The Erroneous Decision By A USPTO Examiner To Register AQUATICA Is Entitled To No Deference

16       Spiraledge is likely to argue that the USTPO's issuance of a registration for

17   AQUATICA is alone sufficient evidence that the mark is suggestive rather than

18   descriptive and precludes summary judgment.  As discussed *supra*, although

19   trademark registrations enjoy a presumption of validity, that presumption is just a

20   burden shifting doctrine which places the initial burden on SeaWorld to produce

21   evidence of invalidity.  Now that SeaWorld has come forward with the

22   overwhelming evidence of descriptiveness described above, the presumption "drops

23   out of the case." *555-1212.com*, 157 F.Supp.2d at 1089.  Thus, the existence of a

24   registration does not preclude a finding of descriptiveness.

25       Moreover, the particular circumstances in this case make the USPTO's

27   uses should be disregarded); *In Re Petroglyph Games, Inc.*, 91 U.S.P.Q. 2d 1332

28   (T.T.A.B. 2009) (relying on evidence from various websites to show frequent third party use of the mark at issue).

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  decision to issue a registration to Spiraledge especially unworthy of deference.

2  While the Office recognized that "aquatica" is the phonetic equivalent of "acuatica,"

3  it overlooked completely the fact that "acuatica" is Spanish for "aquatic."   Had the

4  examiner recognized this, the TMEP would have required a rejection of Spiraledge's

5  application.  The TMEP states that "[i]f the evidence shows that the relevant English

6  translation is literal and direct, and no contradictory evidence of shades of meaning

7  or other relevant meaning exists, the doctrine [of foreign equivalents] generally

8  should be applied by the examining attorney." *See* Gabriel Decl., Exh. J, p. 55

9  (TMEP, §1207.01(b)(vi)(B)).  Here, "aquatic," the English translation of "acuatica"

10  and "aquatica" could not be more literal or direct: it is the exact same word, just

11  absent the "a" at the end.  Because it failed to recognize the applicability of the

12  foreign equivalents doctrine, no weight should be given to the USPTO's decision to

13  register AQUATICA in connection with an "aquatic brand."  *See, Weiss Noodle*, 48

14  C.C.P.A. at 848 (according no weight to the registration given that "[t]he examiner

15  erred in accepting the showing of 'distinctiveness' in granting the registration . . .")

16      In addition, the USPTO's explanation for finding AQUATICA suggestive

17  rather than descriptive contravenes the Federal Circuit's *Bayer* decision, which is

18  discussed in the following section.  The Office stated:

19      "[Spiraledge] has taken the extra effort to add an 'a' to make an

20      otherwise descriptive term 'aquatic' suggestive, as in 'aquatica'.  The

21      same could be said by adding an 'a' to the word 'water,' and thus

22      making an otherwise descriptive word suggestive, 'watera.'  Therefore,

23      the examining attorney does find applicant's showing of aquatic'

24      inherently weak; but not as it relates to the suggestive wording

25      'aquatica.'"

26  Gabriel Decl., Exh. N, p. 123.  As explained *infra*, *Bayer* explicitly rejects this

27  notion that the simple addition of a single letter to the end of an otherwise

28  descriptive word creates a new and distinctive term that is worthy of trademark

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    protection.

2        Nothing in the USPTO's erroneous analysis should cause the Court to second

3    guess the definitive evidence that AQUATICA is descriptive.

4        **E.**    **AQUATICA Is Descriptive Even Without Resort To The Doctrine**

5            **Of Foreign Equivalents**

6        Even if the Court does not apply the doctrine of foreign equivalents, the term

7    "aquatica" is so similar in appearance and sound to "aquatic" that the word is

8    equally descriptive of Spiraledge's aquatic-related products, and therefore

9    unenforceable as a trademark absent proof of secondary meaning.  By simply adding

10   the letter "a" to "aquatic," Spiraledge did not transform that otherwise descriptive

11   word into an inherently distinctive, protectable mark.  The Federal Circuit addressed

12   this precise issue in the case of *In re Bayer Aktiengesellschaft*, 488 F.3d 960 (Fed.

13   Cir. 2007).  There, Bayer sought to obtain a registration for the word ASPIRINA for

14   use on analgesics.  The TTAB affirmed the examining attorney's rejection of the

15   application, reasoning that "aspirin" had long been a generic term for analgesics in

16   the United States, "that consumers will view ASPIRINA as merely a variation or

17   misspelling of the generic term aspirin" and that "the terms are close in sound,

18   appearance and meaning."  *Id.* at 963.  The TTAB also held "that ASPIRINA

19   immediately conveys the impression that Bayer's analgesics are aspirin-based

20   products."  *Id*.  Notably, even though the examining attorney also argued to the

21   TTAB that the ASPIRINA is Spanish for aspirin, it declined to reach that issue

22   given its determination "that ASPIRINA is merely descriptive variation of aspirin"

23   even without translating the word from Spanish.  *Id*.

24       The Federal Circuit affirmed the TTAB's decision.  In making its

25   determination, the court noted that "the relevant features of the mark are considered

26   including appearance, sound, and meaning."  *Id.* at 964.  The court went on to hold

27   that "the mere addition of the letter "a" at the end of the generic term 'aspirin' is

28   simply insufficient to transform ASPIRINA into an inherently distinctive mark for

1 <u>analgesics</u>." *Id.*  The court held that "[a]dding an 'a' to aspirin results in virtually no
2 distinction with respect to the visual impressions of the terms."  *Id.*  The court also
3 noted that while there are some differences in sound and syllables, when
4 "ASPIRINA is considered as a whole, the significant similarities in appearance and
5 meaning of ASPIRINA and aspirin demonstrate that the [TTAB's] finding that
6 'ASPIRINA' is merely descriptive of analgesic goods is supported by substantial
7 evidence." *Id.*

8     Adding the letter "a" to the end of the word "aquatic" does not transform it
9 into an imaginative term for swimwear any more than adding the letter "a" to the
10 end of "aspirin" created an imaginative term for analgesics.  Any rational consumer
11 would associate "aquatica" with "aquatic."  Like "aspirin" and "aspirina," they are
12 "close in sound, appearance and meaning."  *Id.* at 963.   There is "virtually no
13 distinction with respect to the visual impressions of the terms."  *Id.* at 964.

14     In fact, Avi Benaroya, Spiraledge's founder and CEO, has explicitly testified
15 that AQUATICA is descriptive of the company's products and services.  When
16 asked why he thought the name "Aquatica" would be "appropriate," Mr. Benaroya
17 responded that it "█████████████████████████████████████████
18 █████"  Conf. Gabriel Decl., Exh. A (Benaroya Depo., p. 31:10-19).  Mr.
19 Benayora answered "███" when asked whether AQUATICA was an appropriate
20 name for Spiraledge's business "███████████████████████████████████
21 ████"  *Id.* (p. 25:1-20).  He also testified that consumers like the name "Aquatica"
22 because it "██████████████████████████████████████
23 ███████.  Specifically, Mr. Benaroya revealed that when he polled "████████
24 ███████████████████████████████████████████
25 █████."  *Id.*, (p. 24:21-27:2).  When asked why the reaction was so positive, he
26 testified:
27     A:  "████████████████████████████████████
28     Q:  ████████████████████████████████████

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  A: ███████.

2  Q. ████████████████████████

3  A. ███████████████████████

4  Q. ███████████████████

5  A. ████

6  Q. ████████████████████████████

7  ███████████████

8  A. ██████████

9  (*Id.*, p. 25:21-26:17).

10  Chief Marketing Officer Alexander Sienkiewicz agrees.  In a February 2007

11  e-mail exchange discussing the pros and cons of changing the name of the

12  company's name and website to AQUATICA, Mr. Sienkiewicz stated:



19  Conf. Gabriel Decl., Exh. C, p. 16.

20  Unquestionably, just as "ASPIRINA immediately conveys the impression that

21  Bayer's analgesics are aspirin-based products," *Bayer*, 488 F.3d at 963,

22  AQUATICA immediately conveys the impression to consumers interested in

23  aquatic activities that Spiraledge's products are aquatics-related.

24  **F.**    **Third Party Use Of AQUATICA Further Shows The**

25      **Descriptiveness Of The Mark**

26  Use of the AQUATICA mark by third parties in connection with various

27  aquatic-related products further evidences the descriptive nature of the mark

28  irrespective of its Latin-English translation.  *Zobmondo Entertainment, LLC v. Falls*

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*Media, LLC*, 602 F.3d 1108, 1118 (9th Cir. 2010) ("[e]xtensive use of a mark by third parties might indicate that the mark is merely descriptive of a given class of products."); *Shoe Corporation of America v. Juvenile Shoe Corporation*, 266 F. 2d 793, 796 (C.C.P.A. 1959) ("In determining whether a word or syllable has a descriptive or suggestive significance as applied to merchandise it is proper to take notice of the extent to which it has been used in trademarks by others on such merchandise."); *555-1212.com*, 157 F. Supp. 2d at 1089 ("[I]n determining whether a word has a descriptive or suggestive significance . . . it is proper to take notice of the extent to which others in a similar commercial context use the word.").  Third party usage is germane because, "[i]f [a mark] has been frequently . . . used, the inference is warranted that it is not purely arbitrary; that it would likely be understood by purchasers as identifying or describing the merchandise itself, rather than the source thereof, and hence as having little or no trademark significance." *Shoe Corporation*, 266 F. 2d at 796; *see also* McCarthy on Trademarks, § 11:69, p. 11-150 ("[I]f others are in fact using the term to describe their products, an inference of descriptiveness can be drawn.") (citing cases).

As cited in Section III(C)(2), above, numerous third parties are using the AQUATICA mark in connection with their aquatic-related products and services. Several of these aforementioned companies have also obtained registrations for AQUATICA.  Gabriel Decl., Exh. O; *see Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1200 (9th Cir. 2009) ("in some cases a series of prior registrations is evidence of the descriptiveness of a mark."); *Retail Services*, 364 F.3d at 544 ("common sources [of invalidity] include evidence of . . . use of the term by third parties in trademark registrations."); *Zobmondo*, 602 F.3d at 1119 (holding that evidence of websites and copyright registrations has "persuasive weight" as evidence of third-party uses).

It is not just a coincidence that numerous companies which provide aquatics-related products and services use the word "aquatica" in their name.  The AQUATICA mark is common because it is an obvious name that requires no

MOTION FOR SUMMARY JUDGMENT

1  imagination from consumers to discern that a product or service pertains to aquatics.

2  **G.    Spiraledge Cannot Establish Secondary Meaning In The**
3  **AQUATICA Mark As A Matter Of Law**

4  Because AQUATICA is descriptive, Spiraledge can only enforce the mark
5  against SeaWorld and others by establishing "secondary meaning"—*i.e.*, by
6  showing that consumers have come to associate the mark <u>singularly</u> with Spiraledge.
7  *Self-Realization*, 59 F.3d at 911 (holding that the "basic element of secondary
8  meaning is a mental recognition in buyers' and potential buyers' minds that products
9  connected with the [mark] are associated with the same source"); *Papercutter*, 900
10  F.2d at 564 (secondary meaning exists "if the term, although not inherently
11  distinctive, comes through use to be uniquely associated with a single source").

12  The burden to prove secondary meaning rests with Spiraledge, the party
13  claiming rights in AQUATICA.  *See, Papercutter*, 900 F.2d at 564 (holding that
14  "the burden of proof [is] on the party claiming exclusive rights in the designation").
15  The evidentiary burden placed on Spiraledge is rigorous and high.  *Id.*, at 564
16  ("Proof of secondary meaning entails rigorous evidentiary requirements . . . ."); *see*
17  *also*, *Investacorp*, 931 F. 2d at 1525 (holding that "Plaintiff has the burden of
18  sustaining a high degree of proof in establishing a secondary meaning" and that
19  "[t]his requisite high degree of proof must be considered by the court when ruling
20  on a motion [for] summary judgment").

21  Furthermore, and most importantly here, <u>Spiraledge must establish that it</u>
22  <u>acquired secondary meaning as of the date SeaWorld entered the market</u>.  *See,*
23  *PaperCutter*, 900 F.2d at 564 ("To qualify for trademark protection, an owner of a
24  descriptive mark must demonstrate that the mark had acquired secondary meaning
25  before its competitor commenced used of the mark.") (citing cases); *Investacorp*,
26  931 F 2d at 1525 ("[S]econdary meaning must attach to the mark before appellee
27  first used the mark."); *Black & Decker*, 944 F. Supp. at 227 ("The critical question
28  is whether Dunsford's mark had achieved secondary meaning prior to the time

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Black & Decker commenced use of the mark.").

It is undisputed that SeaWorld began using the AQUATICA mark in commerce in March 2008 when it opened Aquatica SeaWorld's Waterpark in Orlando, Florida, nearly sixth months before Spiraledge began its use in commerce in September 2008. *See*, Dkt. No. 34, Atch. 2, ¶ 3; Gabriel Decl., Exh. B.   This fact alone is dispositive and renders it impossible for Spiraledge to establish secondary meaning vis-à-vis SeaWorld.

In fact, Spiraledge cannot establish secondary meaning now, much less in 2008 when SeaWorld began its use.  For the six year period of 2008 through 2013, Spiraledge generated less than ███████ in <u>total</u> revenue from sales of its AQUATICA products.  Conf. Gabriel Decl., Exh. D; *see, Black & Decker*, 944 F. Supp. at 227 (holding that "sales volume, advertising expenditures, and the length and exclusivity of the mark's use" are all relevant in determining secondary meaning); *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (holding that factors to be considered for secondary meaning include the degree of advertising and the length and manner of the use).  This revenue is insignificant relative to the overall swimwear industry from May 2011 through May 2012 generated $4.2 billion in revenue in the United States.  Gabriel Decl., Exh. P.  To put these numbers in even greater perspective, in 2013, Spiraledge's best year, it commanded only ███████ of the of a $4.2 billion swimwear market: far from sufficient to establish marketplace recognition.  Spiraledge has also engaged in virtually no marketing or advertising of its AQUATICA brand either.  From 2008 through 2013 Sprialedge spent just slightly more than ███████ in total advertising of AQUATICA.  Conf. Gabriel Decl., Exh E.  Spiraledge's extremely niche target market of hotels, resorts, and training centers with pools also does not lend itself to widespread market recognition.  Conf. Gabriel Decl., Exh. F, p. 23.

The extensive use of AQUATICA by third parties also weighs against any attempt by Spiraledge to establish secondary meaning.  *See Levi Strauss* , 778 F.2d

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

MOTION FOR SUMMARY JUDGMENT

1  at 1358 (considering whether the has been "exclusive" when analyzing secondary

2  meaning); *Black & Decker*, 944 F. Supp. at 227.  It is inconceivable that consumers

3  singularly associate AQUATICA with Spiraledge given the myriad of uses of the

4  mark by third parties.

**IV.   THE COURT SHOULD GRANT SUMMARY JUDGMENT ON
SPIRALEDGE'S TRADEMARK CLAIMS AND SEAWORLD'S
CANCELLATION CLAIM**

8          As set forth above, the AQUATICA mark is descriptive and lacking

9  secondary meaning in favor of Spiraledge, and is therefore invalid.  A valid mark is

10  a prerequisite to any trademark infringement claim.  *See, supra* Section III(A); 15

11  U.S.C. §§ 1114(1) and 1125(c).  Accordingly, Spirlaedge's trademark infringement

12  claims fail as a matter of law, and the Court should grant summary judgment in

13  SeaWorld's favor on Spiraledge's  first and second causes of action for trademark

14  infringement and unfair competition under the Lanham Act, as well as its third cause

15  of action for unfair competition under California Business and Professions Code

16  §17200.  *See e.g.*, *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.1994)

17  ("state common law claims of unfair competition and actions pursuant to California

18  Business and Professions Code § 17200 are 'substantially congruent' to claims

19  made under the Lanham Act.").

20          Further, summary adjudication in SeaWorld's favor is warranted on its second

21  counterclaim for cancellation of Spiraledge's trademark registration based on

22  improper registration of a descriptive mark.  The Lanham Act expressly provides

23  that "[i]n any action involving a registered mark the court may determine the right to

24  registration, order the cancelation of registrations, in whole or in part, restore

25  canceled registrations, and otherwise rectify the register with respect to the

26  registrations of any party to the action." 15 U.S.C. § 1119 ("*See also* McCarthy on

27  Trademarks §§ 30:108 *et seq.*  It is even error for a Court to refuse to cancel a

28  trademark registration following a finding that the mark is invalid.  *Gracie v.*

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*Gracie*, 217 F. 3d 1060, 1065-1066 (9th Cir. 2000) ("refusing to cancel the registration for 'Gracie Jiu–Jitsu' after the jury declared it to be incapable of serving as a mark was inconsistent with the court's duty to give effect to a jury verdict, and as such erroneous.")  Accordingly, SeaWorld requests that the Court order cancellation of Spiraledge's registration for the AQUATICA mark in accordance with 15 U.S.C. § 1119.

DATED: June 9, 2014                          KINSELLA WEITZMAN ISER KUMP &
                                             ALDISERT LLP


                                             By:  /s/Lawrence Y. Iser
                                                 _____
                                                 Lawrence Y. Iser
                                                 Attorneys for SeaWorld Entertainment,
                                                 Inc.; SeaWorld Parks & Entertainment,
                                                 Inc.; SeaWorld Parks & Entertainment
                                                 LLC: and SeaWorld LLC

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850