

## STAND UP PADDLE BOARDING.

Aquatica are the true pioneers of SUP on the West Coast of Puerto Rico! Stand Up Paddle Boarding is fun for just about everybody, and it's a great fitness activity and for developing core strength. You'll get an exhilarating perspective riding high above the water!



## EQUIPMENT RENTALS

We offer high quality, name brand surfing, SUP, bike, scuba and snorkel rental gear in Aguadilla, Isabela, and Rincon at affordable rates. Ask about our special group and multi-day discounts!



## SURFING LESSONS

While surfing is one of the most difficult sports to master, with the assistance of our experienced, certified surfing instructors, we'll teach you everything you need to get up and surfing on your first time out.



## GEAR SALES & SERVICE

We sell and service the same new, high quality water sports gear that our surfing and diving professionals rely on and choose for themselves. From boards to high end underwater cameras and surf clothing, we have what you need, and at the right price.



## SCUBA DIVING CLASSES

There's nothing like breathing underwater the first time. For certified divers, our professional scuba instructors will guide you through the best diving in West PR. Both beach diving and boat diving are available. Get your PADI certifications from Open Water all the way through Master Instructor.



## ADVENTURE VACATION TOURS

Join us for a Stand Up Paddle Board (SUP) or Bike Eco-Tour with friends and family and learn about the Caribbean ecosystem.

Aquatica Dive Surf SUP Tours | Lessons and Gear   Page 5 of 6



## CONTACT US

VISIT US:            Rt . 110 km 10.0 Gate 5 Maleza alta
                     Aguadilla, PR 00604
                     Click here for directions


HOURS AND PHONE:     PHONE:      (787) 890-6071
                     MONDAY-SAT  9:00 AM TO 5:00 PM
                     SUNDAYS     9:00 AM TO 3:00 PM


WRITE US:            Click here to email us


FOLLOW US:




## CHECK US OUT



*83 reviews of Aquatica Dive & Surf
in Aguadilla*

**Aquatica Dive & Surf**

**TripAdvisor Traveler Rating:**
◎◎◎◎◎
Based on 83 traveler reviews

**TripAdvisor Popularity Index:**
**#2** of 9 activities in Aguadilla

Read reviews | Write a review

© 2014 TripAdvisor LLC

WATER CONDITIONS

I'm loving Spotify's new look. #FreshSpotify http://t.co/PmdB51Jo1q

by *Aquatica PR* *18 days ago*

Dive day for north shore & shack's beach! http://t.co/jWACVe44M5

by *Aquatica PR* *70 days ago*

Exelente dia para buceo y sup! http://t.co/jjv55Id4Vv

by *Aquatica PR* *86 days ago*



**Home | Calendar | Baja Vacation Rental | Charters | Shark Dives | Educational Programs | Weddings | Cool Links | Shark Video | Photo Galleries**

Welcome to Aquatica's website! Home of Amazing Ocean Adventures!



**Aquatica Charters was featured on Discovery Channel's Shark Week 2004 as one of the world's top places to dive with sharks.**

**Welcome Aboard!**
We pride ourselves in being different from other charter operators in Southern California! From exceptional service to outstanding cuisine our commitment to customer service, is across the board… the Aquatica Charter's difference!

**Aquatica Charters offers many activities for both the young and the young at heart!**

Scuba Diving, Shark Diving, Snorkeling, Educational Field Trips, Fishing trips & Boat Parties!



 

We emphasize protection, through reasonable and sensible use of the fragile marine environment. Thus helping to insure our ocean's health, for many generations to come. From children at the elementary school level to seniors, non-swimmers and experienced divers alike, we offer an exciting opportunity for people of all ages and abilities to experience the ocean and its abundant life.

 

**NOAA Coastal Marine Forecast**

**The Coastal Data Information Program (CDIP)**
The latest coastal conditions & California coast wave modeling.





*Copyright 2004 © Aquatica Charters All Rights Reserved.*



Maintained by: ActionMedia.net

Aquatica Bath USA                                                    Page 1 of 2

COUNTRY    WISH LIST (0)    COMPARE    SHOPPING CART    MY ACCOUNT          Welcome visitor you can login or create an account.

+1 866 606-2782
info@aquaticausa.com



aquatica
*Function, Form & Fashion*

Home    Products    Installation    Blog    Video    About    Contact us    Warranty    Retail Partners    Testimonials



Arabella-Wht Freestanding Aqua...
Read more →


Corner Bathtubs


Freestanding Bathtubs


Soaking Bathtubs


Clawfoot Bathtubs


Acrylic Built-in Bathtubs


Stone Bathtubs

## Latest


**Aquatica Nostalgia-Wht-Ash-Legs Freestanding EcoMarmor™ Bathtub**


**Aquatica Karolina Freestanding Stone Bathtub - Fine Matte**


**Aquatica LoveMe-Wht Freestanding EcoMarmor™ Bathtub**


**Aquatica Sensuality-Wht Freestanding AquaStone™ Bathtub**


**Aquatica Emmanuelle-Wht Freestanding AquaStone™ Bathtub**


**Aquatica Olivia-Wht Acrylic Corner Batht**

›

 FREE SHIPPING    CONTINUOUS PROMOTION     30-DAY RETURNS

Aquatica Bath USA                                                        Page 2 of 2

## AQUATICA BATH

'Bathtub' maybe the most accurate word to describe what we at Aquatica create, but it hardly captures the blissful pleasure Aquatica engineer into every one of its bath designs.

Perhaps a better description would be body basins, water cradles inspired by the pools found in nature, whose graceful forms and smooth uninterrupted lines sensuously cradle the body.

We then simply add innovative technologies and modern functionalities, to make your total bathing experience simply perfect.

All Aquatica baths are crafted by masters from one of two modern stone and mineral polymer blends, which bring together the classic grace of stone with modern durability.

The range also includes a number of high quality heavy gauge 100% cast precision acrylic bathtubs, which are made to ensure absolute integrity of hygiene, colour and finish.

| CONTACT US | INFORMATION | PERSONAL | INTERNATIONAL | Designed by |
|---|---|---|---|---|
| **Telephone:** +1 866 606-2782 | Returns | My account | Luxembourg | |
| **Fax:** +1 866 600-5060 | Terms & Conditions | Shopping cart | Germany | |
| **E-mail:** info@aquaticausa.com | Privacy & Cookies | Wish list | Canada | |
| **Address:** 414 Greenwood Dr. Wilmington | Delivery Options | | United Kingdom | |
| New Castle, DE 19808 USA | Retail partners | | Russia | |
| | | | More | |

© 2014 Aquatica Plumbing Group Inc.

| | |
|---|---|
| **To:** | SEAWORLD PARKS & ENTERTAINMENT LLC ( docket@hollandhart.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 78894576 - AQUATICA SEAWORLD'S WATERPARK - N/A |
| **Sent:** | 11/20/2012 1:54:40 PM |
| **Sent As:** | ECOM114@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |
| | Attachment - 24 |
| | Attachment - 25 |
| | Attachment - 26 |
| | Attachment - 27 |
| | Attachment - 28 |
| | Attachment - 29 |
| | Attachment - 30 |
| | Attachment - 31 |
| | Attachment - 32 |
| | Attachment - 33 |



Attachment - 34
Attachment - 35
Attachment - 36
Attachment - 37
Attachment - 38
Attachment - 39
Attachment - 40
Attachment - 41
Attachment - 42
Attachment - 43
Attachment - 44
Attachment - 45
Attachment - 46
Attachment - 47
Attachment - 48
Attachment - 49
Attachment - 50
Attachment - 51
Attachment - 52
Attachment - 53
Attachment - 54
Attachment - 55
Attachment - 56
Attachment - 57
Attachment - 58
Attachment - 59
Attachment - 60
Attachment - 61
Attachment - 62
Attachment - 63
Attachment - 64
Attachment - 65
Attachment - 66
Attachment - 67
Attachment - 68
Attachment - 69
Attachment - 70
Attachment - 71
Attachment - 72
Attachment - 73
Attachment - 74

Attachment - 75
Attachment - 76
Attachment - 77
Attachment - 78
Attachment - 79
Attachment - 80
Attachment - 81
Attachment - 82
Attachment - 83
Attachment - 84
Attachment - 85
Attachment - 86
Attachment - 87
Attachment - 88
Attachment - 89
Attachment - 90

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
#### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**APPLICATION SERIAL NO.**    78894576

**MARK:** AQUATICA SEAWORLD'S WATERPARK

**\*7889457**

**CORRESPONDENT ADDRESS:**
Andrea Anderson
Holland & Hart LLP
Attn: Tracy Baker
P.O. Box 8749
Denver CO 80201-8749

**CLICK HERE TO RESP**
http://www.uspto.gov/tradem:

**APPLICANT:**    SEAWORLD   PARKS   &   ENTERTAINMENT LLC

**CORRESPONDENT'S REFERENCE/DOCKET NO :**
N/A
**CORRESPONDENT E-MAIL ADDRESS:**
docket@hollandhart.com

## OFFICE ACTION

### STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

ISSUE/MAILING DATE: 11/20/2012

THIS IS A FINAL ACTION.

This Office action is in response to applicant's communication filed on November 12, 2012.

The applicant's section 2(d) arguments have been considered but are not persuasive.

For the reasons set forth below, the refusal under Trademark Act Section 2(d) is now made FINAL with respect to U.S. Registration No. 4077618. *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.64(a).

**Section 2(d) Final Refusal**

In the Office Action of May 11, 2012, registration of the applied-for mark was refused because of a likelihood of confusion with the mark in U.S. Registration No. 4077618. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*

Trademark Act Section 2(d) bars registration of an applied-for mark that so resembles a registered mark that it is likely that a potential consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant and registrant. *See* 15 U.S.C. §1052(d). In the seminal decision *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973), the court listed the principal factors to be considered when determining whether there is a likelihood of confusion under Section 2(d). *See* TMEP §1207.01. However, not all the factors are necessarily relevant or of equal weight, and any one of the factors may control in a given case, depending upon the evidence of record. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1355, 98 USPQ2d 1253, 1260 (Fed. Cir. 2011); *In re Majestic Distilling Co.*, 315 F.3d 1311, 1315, 65 USPQ2d 1201, 1204 (Fed. Cir. 2003); *see In re E. I. du Pont de Nemours & Co.*, 476 F.2d at 1361-62, 177 USPQ at 567.

In this case, the following factors are the most relevant: similarity of the marks, similarity and nature of the goods and/or services, and similarity of the trade channels of the goods and/or services. *See In re Viterra Inc.*, 671 F.3d 1358, 1361-62, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Dakin's Miniatures Inc.*, 59 USPQ2d 1593, 1595-96 (TTAB 1999); TMEP §§1207.01 *et seq.*

The applicant's mark is AQUATICA SEAWORLD'S WATERPARK for "amusement park services".

The registrant's mark is AQUATICA for "on-line retail store and wholesale store services featuring swimwear, clothing, and accessories; on-line directories featuring information relating to water-related activities".

Comparison of the Marks
In the Office Action of May 11, 2012, the applicant's mark was found to be legally similar to registrant's mark because they share the dominant term AQUATICA, and despite applicant's additional house mark SEAWORLD'S and generic wording WATERPARK.

In a likelihood of confusion determination, the marks in their entireties are compared for

similarities in appearance, sound, connotation, and commercial impression. *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973); TMEP §1207.01(b)-(b)(v).

The applicant's mark AQUATICA SEAWORLD'S WATERPARK is similar to registrant's mark AQUATICA because they are similar in sound, appearance, connotation and overall commercial impression.

The literal elements of the applicant's mark is first and foremost the fanciful wording AQUATICA with the house mark SEAWORLD'S and the descriptive wording WATERPARK. The applicant initially disclaimed WATERPARK because it is a descriptive term or otherwise generic wording for the applicant's services. The term "waterpark" is merely a type of "amusement park". http://en.wikipedia.org/wiki/Water_park

Articles from the online Wikipedia® encyclopedia may be used to support a refusal or requirement, provided the applicant has an opportunity to rebut such evidence. See In re IP Carrier Consulting Grp., 84 USPQ2d 1028, 1032 (TTAB 2007); TBMP §1208.03; TMEP §710.01(b).

Moreover, the applicant's addition of the house mark SEAWORLD'S reinforces the claim that AQUATICA is Seaworld's waterpark. When marks are otherwise virtually the same, the addition of a house mark is more likely to add to the likelihood of confusion than to distinguish the marks; it is likely that the two products sold under such marks would be attributed to the same source. In re Dennison Mfg. Co., 229 USPQ 141, 144 (TTAB 1986) (holding GLUE STIC for general purpose adhesive in stick form likely to be confused with UHU GLU STIC for adhesives for paper and stationery); Key West Fragrance & Cosmetic Factory, Inc. v. Mennen Co., 216 USPQ 168, 170 (TTAB 1982) (holding SKIN SAVERS for face and throat lotion likely to be confused with MENNEN SKIN SAVER for hand and body lotion); see Hammermill Paper Co. v. Gulf States Paper Corp., 337 F.2d 662, 663, 143 USPQ 237, 238 (C.C.P.A. 1964) (holding HAMMERMILL E-Z CARRY PAK and E-Z PAPER PAK for carrying cases or boxes for typewriter or duplicator paper likely to be confused with E-Z PAK and E-Z CARI for paper bags); TMEP §1207.01(b)(iii).

That is, consumers would very likely believe that SEAWORLD also has an online website featuring information related to water-related activities and an online retail store selling clothing and accessories; and thus mistakenly believe that registrant's services are provided by SEAWORLD.

Therefore, when comparing the marks, each mark must be considered in its entirety; the descriptive portion of a mark cannot be ignored. See In re Nat'l Data Corp., 753 F.2d 1056, 1058, 224 USPQ 749, 750-51 (Fed. Cir. 1985). However, one feature of a mark may be more significant in creating a commercial impression. See In re Nat'l Data Corp., 753 F.2d at 1058, 224 USPQ at 751; TMEP §1207.01(b), (b)(iii), (b)(viii). Descriptive or generic matter is typically less significant or less dominant in relation to other wording in a mark. See In re Chatam Int'l Inc., 380 F.3d 1340, 1342-43, 71 USPQ2d 1944, 1946 (Fed. Cir. 2004); In re Binion, 93 USPQ2d 1531, 1534 (TTAB 2009). Accordingly, the dominant portion of the applicant's mark is the first and foremost term AQUATICA since it is fanciful and conveys something about water.

Since registrant's mark contains only the term AQUATICA, then it follows that AQUATICA is the dominant term of the marks which creates a highly similar commercial impression.

Therefore, the marks are confusingly similar.

The applicant lends much credence that the suggestive wording AQUATICA is synonymous with the descriptive term AQUATIC, to wit "[t]he Cited Mark consists of the term ' aquatica.' This term is clearly evocative of the adjective 'aquatic.'"   From the online dictionary search engine of onelook.com, there are no definitions for the term AQUATICA. In fact, the articles that are mentioned from Wikipedia and Wordnik refers AQUATICA as the name of several waterparks. The registrant has taken the extra effort to add an "a" to make an otherwise descriptive term "aquatic" suggestive, as in "aquatica". The same could be said by adding an "a" to the word "water," and thus making an otherwise descriptive word suggestive, "watera". Therefore, the examining attorney does find applicant's showing of "aquatic" inherently weak; but not as it relates to the suggestive wording "aquatica".

The applicant continues to submit third party registrations showing the mark AQUATICA for a variety of goods and services. The applicant argues that the mark        AQUATICA is commercially weak against the registrant's services of "water-related activities". Collins English Dictionary defines "activities" as "any specific deed, action, pursuit, etc â‡recreational activities." Therefore, the chemical, fish food, camera parts and accessories, and plumbing parts in Registrations Nos. 1859072, 3138130 and 3866969 are goods that would not qualify as "activities". Moreover, the building and construction services in Registration No. 4221140 wouldn't qualify as a water-related activity. Rather such services are for the structural building of something that happens to contain water. The attached online third party websites show that water related activities generally refer to those water activities done for recreational purposes, i.e., swimming. Moreover, this appears to be registrant's intent since they also sell swimwear products.

As to the mark in Registration No. 2302543, ACUATICA for "sport shoes, athletic shoes, pants, shirts, Bermuda shorts, jackets, T-shirt, and sweaters." The difference in the mark is quite apparent, namely the letter "c" where "q" should be. Also, the determination here is whether applicant's amusement park services are related to registrant's online services. As to the coexistence of ACUATICA and the cite mark, prior decisions and actions of other trademark examining attorneys in registering different marks have little evidentiary value and are not binding upon the Office. TMEP §1207.01(d)(vi). Each case is decided on its own facts, and each mark stands on its own merits. *See AMF Inc. v. Am. Leisure Prods., Inc.*, 474 F.2d 1403, 1406, 177 USPQ 268, 269 (C.C.P.A. 1973); *In re Int'l Taste, Inc.*, 53 USPQ2d 1604, 1606 (TTAB 2000); *In re Sunmarks, Inc.*, 32 USPQ2d 1470, 1472 (TTAB 1994).

For all the reasons above, the wording AQUATICA are the dominant terms in each mark and thus not weak nor descriptive for the identified services provided.

Comparison of the Services
In the Office Action of May 22, 2012, the examining attorney found the registrant's services of providing information on water-related activities and online retail store to be closely related to applicant's amusement parks.

In support of the refusal, the examining attorney submitted and submits more attached online websites from Waterpark.com, Moreyspiers.com, Amusement Parks Info, FunNewJersey.com, Themeparks.about.com, and Geico.com clearly showing third party websites providing information on many waterparks around the world or in a certain area.

Moreover, the subject matter of registrant's information services would encompass the water-related activities of applicant's waterpark services. As noted above, Wikipedia® defines waterpark as "an amusement park that features water play areas, such as water slides, splash pads, spraygrounds (water playgrounds), lazy rivers, or other recreational bathing, swimming, and barefooting environments. Water parks in more current states of development may also be equipped with some type of artificial surfing or bodyboarding environment such as a wave pool or FlowRider."

Thus, it is reasonable to assume that registrant's services would include those type of water-related activities that are a part of applicant's waterpark services.

Moreover, the trademark examining attorney has attached evidence from the USPTO's X-Search database consisting of a number of third-party marks registered for use in connection with the same or similar services as those of both applicant and registrant in this case. This evidence shows that the services listed therein, namely amusement and water parks and providing information thereto, are of a kind that may emanate from a single source under a single mark. *See In re Anderson*, 101 USPQ2d 1912, 1919 (TTAB 2012); *In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1785-86 (TTAB 1993); *In re Mucky Duck Mustard Co.*, 6 USPQ2d 1467, 1470 n.6 (TTAB 1988); TMEP §1207.01(d)(iii).

Moreover, in the previous Office Action, the examining attorney argues that registrant's other services, "on-line retail store and wholesale store services featuring swimwear, clothing, and accessories" is closely related to applicant's "amusement park services" because it is often the case that amusement parks also have online stores selling registrant's goods.

Attached are 4 copies of printouts from the USPTO X-Search database, which show third-party registrations of marks used in connection with the same or similar services as those of applicant and registrant in this case. These printouts have probative value to the extent that they serve to suggest that the services listed therein, namely online retail stores and amusement park services, are of a kind that may emanate from a single source. In re Infinity Broad. Corp., 60 USPQ2d 1214, 1217-18 (TTAB 2001); In re Albert Trostel & Sons Co., 29 USPQ2d 1783, 1785-86 (TTAB 1993); In re Mucky Duck Mustard Co., 6 USPQ2d 1467, 1470 n.6 (TTAB 1988); TMEP §1207.01(d)(iii).

The attached Internet evidence consists of third party amusement park websites showing online retail stores, to include applicant's own website. This evidence establishes that the same entity commonly provides the relevant services and markets the services under the same mark. Therefore, applicant's and registrant's services are considered related for likelihood of confusion purposes. See, e.g., In re Davey Prods. Pty Ltd., 92 USPQ2d 1198, 1202-04 (TTAB 2009); In re Toshiba Med. Sys. Corp., 91 USPQ2d 1266, 1268-69, 1271-72 (TTAB 2009).

Evidence obtained from the Internet may be used to support a determination under Section 2(d) that goods and/or services are related. See, e.g., In re G.B.I. Tile & Stone, Inc., 92 USPQ2d 1366, 1371 (TTAB 2009); In re Paper Doll Promotions, Inc., 84 USPQ2d 1660, 1668 (TTAB 2007)

As to the absence of actual confusion, the test under Trademark Act Section 2(d) is whether there is a likelihood of confusion. It is unnecessary to show actual confusion in establishing likelihood of confusion. TMEP §1207.01(d)(ii); *e.g.*, *Weiss Assocs. Inc. v. HRL Assocs. Inc.*, 902 F.2d 1546, 1549, 14 USPQ2d 1840, 1842-43 (Fed. Cir. 1990). The Trademark Trial and Appeal Board stated

as follows:

[A]pplicant's assertion that it is unaware of any actual confusion occurring as a result of the contemporaneous use of the marks of applicant and registrant is of little probative value in an ex parte proceeding such as this where we have no evidence pertaining to the nature and extent of the use by applicant and registrant (and thus cannot ascertain whether there has been ample opportunity for confusion to arise, if it were going to); and the registrant has no chance to be heard from (at least in the absence of a consent agreement, which applicant has not submitted in this case).

*In re Kangaroos U.S.A.*, 223 USPQ 1025, 1026-27 (TTAB 1984).

The overriding concern is not only to prevent buyer confusion as to the source of the goods and/or services, but to protect the registrant from adverse commercial impact due to use of a similar mark by a newcomer. *See In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993). Therefore, any doubt regarding a likelihood of confusion determination is resolved in favor of the registrant. TMEP §1207.01(d)(i); *see Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265, 62 USPQ2d 1001, 1003 (Fed. Cir. 2002); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 464-65, 6 USPQ2d 1025, 1025 (Fed. Cir. 1988).

Since the marks are similar and the services closely related, the examining attorney concludes that prospective purchasers would likely be confused and mistakenly believe that applicant's services and registrant's services emanate from a common source. Accordingly, the examining attorney maintains and makes FINAL the refusal to register applicant's mark on the Principal Register.

Although applicant's mark has been refused registration, applicant may respond to the refusal by submitting evidence and arguments in support of registration.

## PROPER REPONSE TO A FINAL ACTION

Applicant must respond within six months of the date of issuance of this final Office action or the application will be abandoned. 15 U.S.C. §1062(b); 37 C.F.R. §2.65(a). Applicant may respond by providing one or both of the following:

(1) A response that fully satisfies all outstanding requirements;

(2) An appeal to the Trademark Trial and Appeal Board, with the appeal fee of $100 per class.

37 C.F.R. §2.64(a); TMEP §714.04; *see* 37 C.F.R. §2.6(a)(18); TBMP ch. 1200.

In certain rare circumstances, an applicant may respond by filing a petition to the Director pursuant to 37 C.F.R. §2.63(b)(2) to review procedural issues. 37 C.F.R. §2.64(a); TMEP §714.04; *see* 37 C.F.R. §2.146(b); TBMP §1201.05; TMEP §1704 (explaining petitionable matters). The petition fee is $100. 37 C.F.R. §2.6(a)(15).

/William T. Verhosek/

William T. Verhosek
Examining Attorney
USPTO/Law Office 114
571-272-9464
william.verhosek@uspto.gov

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

All informal e-mail communications relevant to this application will be placed in the official application record.

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/. Please keep a copy of the complete TARR screen. If TARR shows no change for more than six months, call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.



# United States of America
### United States Patent and Trademark Office

# AQUATICA

**Reg. No. 4,221,140**
**Registered Oct. 9, 2012**

DEAN PIPITO WATERFEATURES LLC (WISCONSIN LIMITED LIABILITY COMPANY)
437 STATE ST.
OCONOMOWOC, WI 53066

**Int. Cl.: 37**

FOR: BUILDING AND MAINTENANCE OF PONDS AND WATER GARDENS, AND POND RENOVATION, IN CLASS 37 (U.S. CLS. 100, 103 AND 106).

**SERVICE MARK**

FIRST USE 4-1-2001; IN COMMERCE 4-1-2001.

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 85-532,844, FILED 2-3-2012.

CHRISTOPHER BUONGIORNO, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

Int. Cl.: 11

Prior U.S. Cls.: 13, 21, 23, 31 and 34

## United States Patent and Trademark Office

Reg. No. 3,138,130
Registered Sep. 5, 2006

### TRADEMARK
### PRINCIPAL REGISTER



AQUATICA LUXURY BATH & KITCHEN INC. (CANADA CORPORATION)
#561, 7620 ELBOW DR. SW
CALGARY, CANADA T2V1K2

FOR: PLUMBING FIXTURES AND FITTINGS AND PARTS THEREFORE, NAMELY BATHTUBS, BATHTUB ENCLOSURES, FAUCETS, HAND SHOWERS, HAND-HELD SHOWERS, HOT TUBS, KITCHEN SINKS, KITCHEN SINK SPRAYERS, LAVATORIES, LAVATORY BOWLS, MANUALLY-OPERATED PLUMBING VALVES, PLUMBING FITTINGS, NAMELY, SHOWER CONTROL VALVES, PLUMBING FITTINGS, NAMELY, TUB CONTROL VALVES, PLUMBING FITTINGS, NAMELY, DRAINS, PLUMBING FITTINGS NAMELY, SINK STRAINERS, PLUMBING FIXTURES, NAMELY, SHOWER SPRAYERS, SAUNAS, SHOWER DOORS, SHOWER ENCLOSURES, SHOWER HEAD SPRAYERS, SHOWER HEADS, SHOWER PANELS, SHOWER PLATFORMS, SHOWER STANDS, SINGLE LEVER FIXTURES FOR LAVATORIES AND SINKS, SINK PEDESTALS, SINKS, STEAM GENERATORS, TAP WATER FAUCETS, THERMOSTATIC VALVES, TOILET TANKS, TOILETS, TUB PARTS, NAMELY, TUB WASTES, TUB PARTS, NAMELY, TUB OVERFLOWS, WHIRLPOOL BATHS, IN CLASS 11 (U.S. CLS. 13, 21, 23, 31 AND 34).

FIRST USE 5-1-2004; IN COMMERCE 5-1-2004.

PRIORITY CLAIMED UNDER SEC. 44(D) ON CANADA APPLICATION NO. 1203205, FILED 10-22-2004.

SER. NO. 78-569,157, FILED 2-17-2005.

SUSAN STIGLITZ, EXAMINING ATTORNEY



# United States of America

## United States Patent and Trademark Office

# AQUATICA
## Digital

**Reg. No. 3,866,969**

**Registered Oct. 26, 2010**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

9100-6940 QUEBEC INC. (CANADA CORPORATION)
3025, DE BAENE
ST-LAURENT, QUEBEC, CANADA H4S1K8

FOR: UNDERWATER HOUSING FOR DIGITAL CAMERAS AND RELATED ACCESSORIES, NAMELY, PORTS, PORT EXTENSION RINGS, DOME SHADES AND COVERS, LENSES AND CONNECTORS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 3-31-2001; IN COMMERCE 3-31-2001.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "DIGITAL", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF THE TERMS "AQUATICA" AND "DIGITAL" IN STYLIZED CHARACTERS WITH A LINE BETWEEN THEM.

SER. NO. 77-959,369, FILED 3-15-2010.

STEVEN R. FINE, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

Exhibit O Page 129

Swimwear sales rising as US economy improves, say exhibitors at th...    http://articles.sun-sentinel.com/2012-07-24/business/fl-swim-show-2...

Home ¦ News ¦ Broward ¦ Palm ¦ Sports ¦ Entertainment ¦ Life ¦ Health ¦ Business ¦ Opinion ¦ Classified ¦

Home → Collections → **Buyers**



**VICTORIA'S SECRET**

*limited time!*

**FREE**
VS LIMITED EDITION TOTE

with a $65 purchase

ⓘ SEE SITE

## Swimwear sales rising, say exhibitors at Miami Beach swim show

July 24, 2012 | By Doreen Hemlock, Sun Sentinel

Recommend { 0

0    •  •    3

Tweet  •  •  8+1

The swimwear industry ↗ is doing swimmingly, according to exhibitors surveyed at the world's largest industry show now taking place at the Miami Beach Convention Center.

Sales have taken off since the recession and are poised for further growth this year, even as the world economy slows, said executives ↗ from companies ranging from Miami's giant Perry Ellis International, maker of Jantzen and Nike swimwear sold at mass retailers, to Palm Beach start-up Strong Boalt, which specializes in preppy men's trunks sold at resort boutiques.

## 20¢ Tote Bags

discountmugs.com/Tote-Bags

Logo/Blank - Free S/H - Free Rush. Receive 5% off with code: "5OFF".

Genie Intellicode Gitr-3 Remote ...
**$11.57**

But competition is stiff. The swimwear industry is consolidating, as many buyers prefer to deal with large suppliers who can offer support with marketing materials, ads and research, said Oscar Feldenkreis, president ↗ of Perry Ellis, which rang up about $85 million in swimwear sales last year.

Sales dynamics also are changing, as more business ↗ moves to the Internet. Some buyers and media are traveling less often to trade ↗ shows to save on expenses and relying more on Internet contacts. And more U.S. consumers are buying online to try on swimwear at home, instead of in stores, exhibitors said.

**Related Articles**

Swimwear trade show expands in its...
July 23, 2013

Dillard's settles lawsuit
December 19, 2012

Brand exposure at the beach
July 13, 2007

The suits, the celebs, the gossip!
July 12, 2010

Making Waves Thong Ban Has Ripple Effect On Sales.
July 25, 1990

**Find More Stories About**

Buyers

Miami Beach Convention Center

For small producers, niches are key. Germany's swimwear and lingerie maker Anita, which runs its U.S. operations from Fort Lauderdale, for example, has made its name on maternity and large-size suits for women. Its post-mastectomy swimwear tops feature a pocket for a silicone prosthesis to fit in.

Anita projects double-digit growth in U.S. sales this year for two reasons. Its new designs appeal more to the U.S. buyer, who prefers a larger swimsuit than European women. And it is increasing U.S. marketing now that Europe's economy is slow, said Steve Bernstein, general manger for Anita's U.S. operations.

South Florida used to be a top production site for swimwear in the 1960s and 1970s, but most production has moved overseas. Miami's Luli Fama, which sells more than $5 million a year in upscale bathing suits, moved its factory to Colombia about three years ago because owners said they could not find enough qualified seamstresses in South Florida to meet its growing production needs.

"The average age of our factory workers in South Florida was 50. Young people here don't want to work in sewing," said Augusto Hanimian, an owner with the brand that fetches about $200 per bikini in stores.

Miami shines as a distribution hub, however, as the industry show illustrates. The four-day event ↗ that runs through Tuesday features about 400 exhibitors showing 2,500 lines. Roughly 7,500 exhibitors, buyers and media from 60 countries are expected to attend, up from 6,500 to 7,000 last year, organizers said.

"We sold out in record time this year" and still have a waiting list of brands looking to exhibit, said Judy Stein, executive director ↗ of the Swimwear Association of Florida, which has been organizing the annual event now in its 30th year and billed as the world's longest-running swimwear show.

Nationwide, swimwear sales rose 5 percent in the 12 months ending in May to reach nearly $4.2 billion, said retail specialists NPD Group of Port Washington, N.Y.

Worldwide, swimwear sales are expected to reach $17.6 billion in 2015, according to Global Industry Analysts ↗ of San Jose, Calif.

1 of 2

6/4/2014 3:05 PM

Swimwear sales rising as US economy improves, say exhibitors at th...    http://articles.sun-sentinel.com/2012-07-24/business/fl-swim-show-2...

dhemlock@tribune.com or 305-810-5009.

# Maison Scotch

scotch-soda.com/Maison_Scotch

Buy your look at the Official Shop. Order now - Fast & Free shipping!

**Featured Articles**



Do Heat appreciate magnitude of Game 5?



Bermuda Triangle just a myth, U.S. says



Jailed dancer removes clothes, masturbates while in holding cell

MORE:

Could Heat find value in NBA free agency?

Would Heat give Peace a chance?

Jailed dancer removes clothes, masturbates while in holding cell

Are new free-agent options opening to Heat?

Can Bosh, Wade break out of their funk?

Can the Heat count on an error-free Chalmers?

Please note the green-lined linked article text has been applied commercially without any involvement from our newsroom editors, reporters or any other editorial staff.

6/4/2014 3:05 PM

Exhibit P Page 131