1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   SPIRALEDGE, INC.,                    )   Case No. 13cv296-BAS (BLM)
                                          )
12                      Plaintiff,        )   **ORDER GRANTING IN PART AND**
                                          )   **DENYING   IN   PART   PLAINTIFF'S**
13   v.                                   )   **MOTION TO COMPEL PRODUCTION OF**
                                          )   **DOCUMENTS**
14   SEA WORLD ENTERTAINMENT, INC., et al., )
                                          )   **REDACTED**
15                      Defendants.       )
     ─────────────────────────────────    )   **[ECF NO. 68]**
16

17

18          Currently before the Court is Plaintiff's April 18, 2014 motion to compel production

19   of documents [ECF No. 68 ("MTC")], Defendants' April 29, 2014 opposition to the motion

20   [ECF No. 86 ("Oppo.")], and Plaintiff's May 5, 2014 reply [ECF No. 82 ("Reply")].  For the

21   reasons set forth below, Plaintiff's motion to compel production of documents is **GRANTED**

22   **IN PART AND DENIED IN PART**.

23                     <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

24          Plaintiff filed a complaint in this matter on February 5, 2013 [ECF No. 1] and an

25   amended complaint on March 12, 2013 alleging trademark infringement, unfair competition

26   in violation of the Lanham Act, and unfair competition in violation of Business and

27   Professions Code Section 17200.  ECF No. 9.  Defendants filed an answer and counterclaim

28   on March 12, 2013 [ECF No. 10] and Plaintiff filed an answer on April 5, 2013 [ECF No. 24].

Plaintiff filed a motion for preliminary injunction on April 17, 2013 [ECF No. 28] which was denied on July 9, 2013.  ECF No. 58.  The Court held a Case Management Conference on May 10, 2013 [ECF No. 43] and a Mandatory Settlement Conference on June 27, 2013 [ECF No. 57].

On April 14, 2014, counsel for both parties jointly contacted the Court regarding a discovery dispute brought by Plaintiff concerning Defendants' assertion of the attorney client privilege in response to some of Plaintiff's discovery requests.  ECF No. 65.  In response, the Court ordered Plaintiff to file its motion to compel on or before April 18, 2014, Defendants to file their opposition on or before April 29, 2014, and Plaintiff to file its reply, if any, on or before May 5, 2014.  Id.

## LEGAL STANDARD

The Federal Rules of Civil Procedure generally allow for broad discovery, authorizing parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 26(b)(1).  Also, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  Id.  Relevant information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence," and need not be admissible at trial to be discoverable.  Id.  A party may request the production of any document within the scope of Rule 26(b).  Fed. R. Civ. P. 34(a).

Federal Rule of Evidence ("Fed. R. Evid.") 502 generally governs waiver of the attorney-client privilege.  Fed. R. Evid. 502 provides that attorney-client privilege and work product protection can be waived by disclosures made during a federal proceeding if: "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness be considered together."  Fed. R. Evid. 502. This subject matter waiver, however, "is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."  Fed. R. Evid. 502 advisory committee's note.  "Rule 502 serves the

following purposes: (1) resolving longstanding disputes about the effect of certain disclosures of privileged information—specifically disputes involving inadvertent disclosure and subject matter waiver and (2) respond to the widespread complaint that litigation costs necessary to protect against waiver of privilege have become prohibitive due to the concern that any disclosure will operate as a subject matter waiver of all protected communication.'" RIPL Corp. v. Google Inc., 2013 WL 6632040, *3 (W.D. Wash. Dec. 17, 2013) (quoting Great–West Life & Annuity Ins. Co. v. Am. Econ. Ins. Co., 2013 WL 5332410, * 7 (D. Nev. Sept. 23, 2013) (citing Fed. R. Evid. 502 Advisory Comm. Note, Rev. 11/28/2007)).  The rule "seeks to provide a predictable, uniform set of standards under which parties can determine the consequences of a disclosure of [privileged information]. Parties … need to know, for example, that if they exchange privileged information pursuant to a confidentiality order, the court's order will be enforceable."  Fed. R .Evid. 502 Advisory Comm.  Note, Rev. 11/28/2007.

"When a party puts at issue legal advice it received, e.g., by way of an advice of counsel defense, it waives the attorney-client privilege with respect to those communications." Oakley, Inc. v. Bugaboos Eyewear Corp., 2010 WL 4117223, *2 (S.D. Cal. Oct. 15, 2010)(citing Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1163 (9th Cir. 1992)). A party cannot assert an advice of counsel defense, while protecting the communications from disclosure. Id. "'[S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice.'" Id. (quoting In re EchoStar Commc'n Corp., 448 F.3d 1294, 1301 (Fed. Cir. 2006)). "'To prevent such abuses, … when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter.'" Id.

## DISCUSSION

The instant discovery dispute concerns Defendants' responses to Plaintiff's requests for production of documents ("RFP") and their assertion of the advice of counsel defense. MTC at 8-9.  The parties agree that Defendants have waived the attorney-client privilege as

to "the advice of counsel regarding the decision to use the Aquatica name,"[1] but disagree as to the full scope of that waiver.  MTC at 9, 13; Steinberg Decl., Exh. 27.  Plaintiff argues that even in light of Defendants' definition of the waiver[2], Defendants have not produced all of the required documents.  MTC at 13.  In support, Plaintiff lists various categories of communications[3] which it argues Defendants have already produced and which show "that a wide range of issues and considerations were addressed in the legal advice that played a role in [Defendants'] decision-making about the Aquatica name over the years, and the merits of any potential litigation," and argues that most of the documents being improperly withheld by Defendants relate to one or more of the exact same categories.  Id. at 13-14. Plaintiff's position is that since the withheld documents relate to the legal advice Defendants received on the risk of using the Aquatica name, they are within the scope of Defendants' intentional waiver.  Id. at 15. Plaintiff asks that the Court grant its motion to compel following *in camera* review.  Id. at 18.

Defendants argue that Plaintiff's motion is "overreaching and without merit, and the motion should be denied in its entirety."  Oppo. at 6.  Defendants contend that Plaintiff's position that "an advice of counsel defense waived the attorney-client privilege as to all communications before this suit was filed pertaining to the trademark at issue, Aquatica" is incorrect and that only documents "with 'direct relevance of the advice of counsel itself need

---

[1]This is the language that Defendants used in their email to Plaintiff's counsel informing Plaintiff's counsel that Defendants would be waiving the privilege with respect to the advice of counsel.  See Declaration of Stephen C. Steinberg ("Steinberg Decl."), Exh. 25.

[2]Plaintiff states that Defendants have waived the privilege as to anything "related to [their] decision to use the Aquatica name and the evaluations regarding the likelihood of success in a dispute with [Plaintiff]." MTC at 13.

[3]Those categories include: ██████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████.

be disclosed.'" Id. at 5 (quoting Chiron Corp. V. Genentech, Inc., 179 F. Supp. 2d 1182, 1186 (E.D. Cal. 2001)). Defendants contend that they produced all opinions of counsel relating to Plaintiff's accusations of willful infringement, but did not "produce every attorney-client communication relating to its Aquatica waterpark." Id. at 12. Defendants argue that their waiver is limited to privileged correspondence directly related to the advice they received which was:



Id. at 14-15 (internal citations omitted). Based upon the scope of their waiver, Defendants produced the following documents:

> all attorney-client communications relating to the validity of the AQUATICA mark, the likelihood of confusion between the parties' uses of the mark, [Defendants'] likelihood of success in either USPTO proceedings or a judicial infringement action, and the reasonableness of [Defendants'] reliance upon [their] counsel's opinions.

Id. at 15. Defendants contend that they have properly withheld documents relating to their (1) trademark applications, (2) litigation strategy, (3) strategy in Plaintiff's opposition proceeding, (4) unrelated attorney opinions, and (5) settlement communications. Id. at 19-22. Defendants argue that contrary to Plaintiff's arguments, they have not waived the privilege as to every subject that was tangential to the advice they received or that was contained in the opinions letter they produced and that the work product that was created by their attorneys and never provided to Defendants does not have to be produced. Id. at 23-26. Finally, Defendants state that in camera review will demonstrate that Defendants have not used the attorney-client privilege as a "sword and a shield." Id. at 17.

///

///

**A.    Communications on Settlement, Negotiating, and/or Acquisition**

On February 25, 2014, Defendants asserted the advice of counsel defense and acknowledged that they were waiving the privilege as to "the advice of counsel regarding the decision to use the name Aquatica." Steinberg Decl., Exh. 25.  It is undisputed that Defendants then produced a number of privileged communications that contained the relevant advice of counsel.  However, the vast majority of the documents that Defendants produced were unredacted[4] and they contained information on a variety of subjects, including subjects that were beyond the scope of the intended waiver.  Steinberg Decl., Exhs.  Plaintiff argues that this production of unredacted documents constitutes a subject matter waiver of the privilege as to all subjects discussed in the documents.  MTC at 11-12; Reply 2-3.  Defendants counter that they have not waived the privilege as to the additional subjects because they only produced the documents in an unredacted format in order to prevent discovery disputes over the extent of the redactions.[5]  Oppo. at 23-24.

Under Fed. R. Evid. 502, a party waives the attorney-client privilege and work product protection by disclosing communications during a federal proceeding if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness be considered together." Fed. R. Evid. 502.  In this case, it is undisputed that Defendants intentionally produced the unredacted documents to Plaintiff and that the produced documents contain privileged communications about subjects Defendants claim are beyond the scope of their advice of

---

[4]Plaintiff attached at least some of the produced documents to the declaration in support of its motion to compel and all but one document was unredacted.  Steinberg Decl., Exh. 16.

[5]In support, Defendants cite Intex Recreation Corp. v. Metalast, S.A., 2005 WL 5099032, *5 (D. D.C. March 2, 20015) which stated that "the fortuity of combining opinions or subjects in one letter should not result in a waiver of privilege as to unrelated subject matters" and found that the defendant was only required to produce settlement material that "contradicts or casts doubt on the earlier opinion letters."  Opp. at 23 (quoting Intex,  2005 WL 5099032 at *5).  While the Court agrees that the privilege as to unrelated subject matters should not be waived merely because the matters appear in an opinion letter produced in support of an advice of counsel defense, the instant dispute differs from Intex in that the opinion letter that was produced by the defendant in Intex redacted all information that did not relate to the patent at issue so the privilege for that material was never waived.  See Intex, 2005 WL 5099032 at *6.  In contrast, Defendants in this case did not redact or otherwise attempt to continue to protect the information contained in the documents.

counsel waiver.  Defendants have not presented any evidence indicating that the disclosure was unintentional, that they made any effort to prevent or limit the disclosure, or that they advised Plaintiff that while they were not redacting the documents, they only intended to waive the privilege as to certain specified portions of the documents.  Moreover, the Protective Order agreed upon by the parties and entered by the Court merely addresses inadvertent disclosures and potential e-discovery productions.  See ECF Nos. 33 at 13 and 40.  Accordingly, Defendants have waived the privilege as to all communications disclosed in the produced documents and the first element is satisfied.  Fed. R. Evid. 502.  The second element also is satisfied as the parties agree that there are unproduced privileged documents that concern the same subjects that were contained in the initial intentional unredacted production.  Oppo. at 23.  The Court's focus therefore is on the third element - whether in fairness the undisclosed communications should be considered with the disclosed communications.

The advisory notes to Fed. R. Evid. 502 instruct that

> a voluntary disclosure in a federal proceeding … generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. [citation omitted] Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.

Fed. R. Evid. 502 advisory committee's note.  Plaintiff argues that "fairness dictates that the withheld documents must be disclosed" because Defendants intend to rely on their "selectively produced attorney-client privileged documents to establish its good faith belief that it could validly use the Aquatica mark in the face of mounting facts to the contrary" and because Defendants have "selectively disclosed various attorney-client communications that suggest that early in time . . . . it was reasonable for SeaWorld to broadly pursue use of the Aquatica mark because of the opinions of its legal counsel.  However, [Defendants have] blocked [Plaintiff's] ability to challenge the inferences raised by the disclosed attorney-client

communications because [Defendants] continue[] to withhold the majority of related communications, particularly those from after 2008." MTC at 17.

Defendants do not address their intentional waiver under Fed. R. Evid. 502 and instead insist that they have "properly maintained the privilege as to [the unproduced] documents." Oppo. at 12. Defendants do, however, contend that maintaining the privilege of the unproduced documents would not be unfair to Plaintiff because the withheld documents regarding settlement and the opposition proceedings are not "directly relevant" to the opinions relied upon by Defendants and "do not reflect any attorney opinions concerning the merits of the case or [Defendants'] likelihood of success before the USPTO or an infringement action." Id. at 22. Defendants further contend that "tangential issues raised in the opinion letters do[] not broaden the scope of the waiver to include all such issues" and that Plaintiff's request for all confidential information about discussions Defendants had about negotiations or potentially purchasing Plaintiff's ITU application and domain name simply because Defendants provided Plaintiff with some of this information "in the same communications in which they provided their substantive analysis on the merits" is improper. Id. at 22-23.

The Court finds that while Defendants have waived the attorney-client privilege for all information contained in the documents already produced, this is not the unusual situation where "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of [Plaintiff]." Fed. R. Evid. 502. Here, Defendants have produced

> all attorney-client communications relating to the validity of the AQUATICA mark, the likelihood of confusion between the parties' uses of the mark, [Defendants'] likelihood of success in either USPTO proceedings or a judicial infringement action, and the reasonableness of [Defendants'] reliance upon [their] counsel's opinions.

Id. at 15. Therefore, any settlement communications or negotiations that relate to the validity of the mark, likelihood of confusion, likelihood of success, or the reasonableness of the Defendants' reliance on the advice of counsel have been (or should be) produced. Any other settlement communications or negotiations, such as when to make a settlement offer

to Plaintiff or whether to try to acquire Plaintiff, are irrelevant (unless they incorporate or rely on an analysis of the validity of the mark, likelihood of confusion or success, or reasonableness of the reliance).  Plaintiff has not presented any information indicating that Defendants are using or intend to use the irrelevant settlement or negotiation communications in any way to support their advice of counsel defense.  Similarly, Defendants have indicated that these topics are irrelevant to their defense.[6] Id. at 21-23. As such, there is no evidence indicating that Defendants are intentionally putting "protected information into the litigation in a selective, misleading and unfair manner" [Fed. R. Evid. 502] and the Court has no reason to believe that is the case.  Accordingly, Plaintiff's motion to compel all additional privileged communications regarding settlement, negotiation and acquiring Plaintiff is **DENIED**.

**B.     Communications Regarding Defendants' Trademark Applications and Strategy in Plaintiff's Opposition Proceedings**

Plaintiff argues that Defendants should be required to produce all communications on this subject because they relate to communications that Defendants have already produced and because Defendants' "communications with its attorneys related to its trademark applications, the opposition proceedings, the PTO's rejections, and [Defendants'] responses to those rejections, necessarily relate to [their] reliance on the advice of [their] counsel about the likelihood of confusion."  MTC at 14-15; Reply at 3-4.

Defendants object to Plaintiff's broad request and reiterate that their waiver only extends to the scope of the advice of counsel; it does not encompass all documents concerning its applications to register its trademarks. Oppo. at 18-20. As previously stated, Defendants' waiver extends to "the advice of counsel regarding the decision to use the name Aquatica" and "all attorney-client communications relating to the validity of the AQUATICA mark, the likelihood of confusion between the parties' uses of the mark,

---

[6]If the Court is incorrect and Defendants attempt to rely on theses communications or the challenged subject matters to prove any issue or defense, the Court **RECOMMENDS** that Defendants' efforts be **DENIED**.

[Defendants'] likelihood of success in either USPTO proceedings or a judicial infringement action, and the reasonableness of [Defendants'] reliance upon [their] counsel's opinions" and Defendants claim they have produced all such documents.  Steinberg Decl, Exh. 25.; Oppo. at 15.  Defendants object to the production of any additional communications regarding its trademark applications.

As set forth in Section A. above, the Court finds that Defendants' intentional production of unredacted documents has not created a subject matter waiver as to all subjects discussed in the produced documents and therefore Defendants do not have to produce all privileged communications regarding trademark applications and strategy in the opposition proceedings merely because the subjects were discussed in the unredacted documents produced by Defendants.  Plaintiff's alternative argument is that Defendants must produce all documents related to its trademark applications because the PTO found a likelihood of confusion and therefore the documents must "necessarily relate to its reliance on the advice of counsel about the likelihood of confusion."  Reply at 3-4.

The Court disagrees with Plaintiff's assumption.  The Court finds that it is possible that there are communications regarding Defendants' trademark applications and its strategy in Plaintiff's opposition proceedings that do not touch upon advice or opinions from Defendants' counsel regarding the decision to use the name Aquatica, and/or the likelihood of confusion, likelihood of success, and reasonableness of the reliance, and which therefore are beyond the scope of Defendants' waiver.  For example, an attorney-client communication relating to litigation strategy in the PTO, such as the timing of discovery requests, would not be encompassed by the advice of counsel waiver in this case.  Such communications are irrelevant and beyond the scope of the waiver and need not be produced. However, if a communication relates to "the validity of the AQUATICA mark, the likelihood of confusion between the parties' uses of the mark, [Defendants'] likelihood of success in either USPTO proceedings or a judicial infringement action, and the reasonableness of [Defendants'] reliance upon [their] counsel's opinions," it must be produced to Plaintiff.

Accordingly, Plaintiff's motion to compel communications that fall into this category is **GRANTED IN PART AND DENIED IN PART**.  Defendants are required to produce all additional privileged communications regarding its trademark applications and strategy in Plaintiff's opposition proceedings that relate to the validity of the AQUATICA mark, the likelihood of confusion between the parties' uses of the mark, Defendants' likelihood of success in either USPTO proceedings or a judicial infringement action, and the reasonableness of Defendants' reliance upon their counsel's opinions.  Communications concerning Defendants' strategy for their trademark applications and action in the opposition proceedings which do not touch upon advice or opinions received from counsel about the mark, need not be produced or may be redacted as necessary if combined with relevant opinions or advice.  At this time, the Court declines to perform an *in camera* review of the documents that have been lodged as the Court is confident that counsel can comply with the Court's order.

### C.    Communications Containing Unrelated Attorney Opinions

Defendants state that they have withheld documents that "contain attorney opinions regarding foreign trademarks and [Defendants'] use of the AQUATICA mark outside the United States, and which do not speak to the opinions at issue here." Oppo. at 22.  Plaintiff does not appear to claim that Defendants have waived any privilege regarding this subject through their production.  See MTC; Reply.  In addition, the Court does not find that fairness requires Defendants to produce this information to Plaintiff as Defendants have asserted the advice of counsel defense in response to Plaintiff's allegations in the instant matter which does not concern foreign use of the AQUATICA mark.  Accordingly, the Court finds that Defendants' waiver does not extend to communications regarding attorney opinions concerning foreign trademarks and Defendants' use of the AQUATICA mark in foreign countries.  These communications fall outside of the scope of the waiver and Defendants are not relying on the opinions contained in these communications in the instant matter.  Accordingly, Plaintiff's motion to compel any documents that fall into this category is **DENIED**.

**D.    Attorney Work Product Never Communicated to Defendants**

Defendants rely on <u>In re EchoStar Commc'n Corp.</u>, 448 F.3d at 1303 for their position that the waiver does not extend to attorney work product that was never communicated to Defendants.  Oppo. at 25.  Plaintiff agrees that <u>EchoStar</u> applies, but argues that if any of the communications that were not provided to Defendants "describe or reference communications with [Defendants], then they must be produce."  Reply at 6 (citing <u>In re EchoStar Commc'n Corp.</u>, 448 F.3d at 1302-1304).  <u>EchoStar</u> recognized three categories of attorney work product relevant to the advice of counsel defense.   <u>In re EchoStar Commc'n Corp.</u>, 448 F.3d at 1302.  The categories include

> (1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client.

<u>Id.</u> (citing <u>Thorn EMI N. Am. v. Micron Tech.</u>, 837 F. Supp. 616, 622-623 (D. Del. 1993)).  The court in <u>EchoStar</u> found that when a party asserts the advice of counsel defense in response to a claim of willful infringement, it waives its attorney-client privilege for the first and third category of documents, but not the second category of documents.  <u>Id.</u> at 1302-1303.  The court found that the second category of documents  "deserve[d] the highest protection from disclosure" under Fed. R. Civ. P. 26(b)(3) and "provides little if any assistance to the court in determining whether the accused knew it was infringing."  <u>Id.</u> at 1303-1304.

The Court finds that the conclusion in <u>EchoStar</u> is equally applicable to the instant matter and that work product that was not communicated to Defendants need not be produced unless the work product describes or summarizes a communication between an attorney and Defendants on the relevant topics.  Accordingly, Plaintiff's motion to compel any documents that fall into this category is **GRANTED IN PART AND DENIED IN PART**. Defendants must produce any "documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications

to or from the client." In re EchoStar Commc'n Corp., 448 F.3d at 1302. If the communications contain work product described in the second category of documents, Defendants may redact the documents as necessary. Id. at 1304. Defendants need not produce any other uncommunicated work product. At this time, the Court declines to conduct an *in camera* review of the documents as the Court has no reason to believe that Defendants cannot comply with the Court's Order and produce the required communications. All responsive communications must be produced by **June 27, 2014.**

### E.    Communications Regarding Litigation Strategy

Plaintiff contends that Defendants are improperly withholding privileged documents involving attorney Andrea Anderson. Reply at 4-5. Plaintiff argues that Defendants have waived the privilege as to communications involving Ms. Anderson by intentionally producing privileged communications involving this attorney and because she is not part of the trial team. Id. Defendants contend that the communications identified on their privilege log are between Ms. Anderson, "one of [Defendants'] outside trademark attorneys," and their current trial counsel and contain "purely strategic discussions about the instant litigation" which "plainly fall outside the scope of the waiver." Oppo. at 20.

Initially, to the extent Plaintiff's claim is premised on the argument that Defendants' unredacted document production constituted a subject matter waiver requiring the production of all privileged communications on the same subjects, including communications involving Ms. Anderson, Plaintiff's request is denied. As set forth in Section A. above, the Court has found that there was not a subject matter waiver under Rule 502 as to the additional subjects discussed in the unredacted documents produced to Plaintiff. The Court therefore will address only Plaintiff's argument that the privileged communications must be produced because Ms. Anderson is not part of the trial team.

As the parties state, there is a split of authority regarding whether a defendant's privilege waiver based upon an advice of counsel defense extends to communications with trial counsel. Several courts have held that an advice of counsel defense waiver does not encompass communications involving trial counsel. See In re Seagate Technology, LLC, 497

F.3d 1360, 1374 (Fed. Cir. 2007) (holding "as a general proposition, that asserting the advice of counsel defense and disclosing opinions of opinion counsel do not constitute waiver of the attorney-client privilege for communications with trial counsel"); see also Collaboration Properties, Inc. v. Ploycom, Inc., 224 F.R.D. 473, 476-477 (N.D. Cal. 2004) (stating that waiver did not extend to litigation-related communications with litigation counsel after the complaint was filed).  Other courts have chosen a middle ground between declaring all communications with trial counsel privileged and extending the waiver to all communications with trial counsel.  See Genentech, Inc. v. Insmed Incorporation, 442 F. Supp. 2d 838, 847 (N.D. Cal. 2006) (adopting a middle ground approach and giving Plaintiff access to "opinion type" communications with trial counsel) (citing Intex Recreation Corp. v. Metalast, S.A., 400 F. Supp. 2d 123 (D.D.C.2005); Beneficial Franchise Co. v. Bank One, N.A., 205 F.R.D. 212 (N.D. Ill. 2001); BASF Aktiengesellschaft v. Reilly Indus., Inc., 283 F. Supp. 2d 1000 (S.D. Ind. 2003); and Micron Separations, Inc. v. Pall Corp., 159 F.R.D. 361 (D. Mass. 1995) as generally finding waiver "appropriate to the extent the advice or work product of trial counsel was communicated to the client" and "contained conclusions or advice that contradict or cast doubt on the earlier opinions").

The question is more difficult when, as here, the communications at issue take place between opinion counsel and trial counsel.  Courts have found that waiver should extend to communications between opinion counsel and trial counsel where trial and opinion counsel were from the same firm or office or where the communications concern the opinions that are the basis for the advice of counsel defense being asserted.  See Terra Novo, Inc. v. Golden Gate Products, Inc., 2004 WL 2254559, *3 (N.D.Cal., 2004) (finding that defendant waived the attorney-client privilege for all communications between Litigation Counsel and Opinion Counsel relating to invalidity of the patent in suit); see also Informatica Corp. v. Business Objects Data Integration, Inc., 454 F. Supp. 2d 957, 964 (N.D. Cal., 2006) (finding the privilege waived for all relevant communications and work product of all counsel and noting that "[w]hile opinion counsel and trial counsel can be walled off from each other, the immurement is immaterial - what matters, according to the decision

by the Federal Circuit in <u>EchoStar</u>, is the state of mind of [defendant]"); and <u>Celerity, Inc.</u> <u>v. Ultra Clean Holding, Inc.</u>, 476 F. Supp. 2d 1159, 1164 (N.D. Cal. 2007) (noting that the court has previously ruled "where opinion counsel and trial counsel are in the same firm, the same shelter does not extend for communications between a client and trial counsel, <u>if they are on the subject of the opinion relied on</u>) (emphasis in original).

Contrary to Plaintiff's argument, the Court believes that Defendants are not claiming privilege because Ms. Anderson is part of the trial team or because she was communicating with trial counsel. Rather, Defendants are claiming privilege as to many of Ms. Anderson's communications or notes because the communications or notes themselves are not relevant to the advice of counsel defense asserted in this case and the resulting waiver. <u>See</u> Oppo. at 20 (communications between Ms. Anderson and current trial counsel were withheld because they involve "purely strategic discussions about the instant litigation ... [and] plainly fall outside the scope of the waiver").

The Court concludes that Ms. Anderson's communications are not outside the scope of the waiver merely because they occurred between Ms. Anderson and trial counsel. The Court further finds that her communications and notes are outside the scope of the waiver if they only relate to litigation strategy. If, however, there are conversations between Ms. Anderson and trial counsel (or notes regarding such communications) that concern the validity of the AQUATICA mark, the likelihood of confusion between the parties' uses of the mark, the likelihood of success in either PTO proceedings or a judicial infringement action, or the reasonableness of Defendants' reliance on counsel's opinions, those communications are encompassed by the advice of counsel waiver and they must be produced. Accordingly, Plaintiff's motion to compel communications that fall into this category is **GRANTED IN PART AND DENIED IN PART**. Defendants are required to produce all communications between its trial counsel and opinion counsel, including Ms. Anderson, regardless of when the communications occurred, which concern the advice of counsel regarding the decision to use the name Aquatica. If the communications only contain litigation strategy and do not discuss opinions related to the advice of counsel defense that Defendants have raised, they

need not be produced.

## CONCLUSION

1.      Plaintiff's motion to compel communications regarding settlement, negotiation and acquiring Plaintiff is **DENIED**.

2.      Plaintiff's motion to compel communications regarding Defendants' trademark applications and strategy in Plaintiff's opposition is **GRANTED IN PART AND DENIED IN PART**.  Defendants are required to produce the required communications or before **June 27, 2014**.

3.      Plaintiff's motion to compel any documents that  "contain attorney opinions regarding foreign trademarks and [Defendants'] use of the AQUATICA mark outside the United States" is **DENIED**.

4.      Plaintiff's motion to compel attorney work product that was never communicated to Defendants is **GRANTED IN PART AND DENIED IN PART**.  Defendants must produce the required communications on or before **June 27, 2014**.

5.      Plaintiff's motion to compel communications between Defendants' trial counsel and opinion counsel is **GRANTED IN PART AND DENIED IN PART**.  Defendants are required to produce the required communications on or before **June 27, 2014**.

**IT IS SO ORDERED.**


DATED:  June 18, 2014

BARBARA L. MAJOR
United States Magistrate Judge